MHW

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

FILED
8-6-2008 LCW
AUG 0 6 2008
AUG 06 2008
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

United States of America ex rel.    )

   CORTEZ JONES  (R-26113)    )
(Full name and prison number)    )
(Include name under which convicted)    )

PETITIONER    )

      vs.    )

   TERRY Mc CANN    )
(Warden, Superintendent, or authorized    )
person having custody of petitioner)    )

RESPONDENT, and    )

(Fill in the following blank **only** if judgment    )
attacked imposes a sentence to commence    )
in the future)    )

ATTORNEY GENERAL OF THE STATE OF    )
   ILLINOIS    )
(State where judgment entered)    )

**08CV4429**
**JUDGE ZAGEL**
**MAGISTRATE JUDGE BROWN**

Case Number of State Court Conviction:

   00-CR-5388

**PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY**

1.  Name and location of court where conviction entered: CIRCUIT COURT OF COOK COUNTY,

   ILLINOIS, 2650 S. CALIFORNIA, CHICAGO ILL, 606

2.  Date of judgment of conviction: DEC. 20, 2002

3.  Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

      FIRST DEGREE MURDER

4.  Sentence(s) imposed: 30yrs

5.  What was your plea? (Check one)    (A) Not guilty    (X )
                                   (B) Guilty        ( )
                                   (C) Nolo contendere  ( )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:
               N/A

## PART I -- TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):      Jury ( )          Judge only (XX)

2. Did you testify at trial?   YES ( )        NO      (XX)

3. Did you appeal from the conviction or the sentence imposed? YES ( X )  NO ( )

   (A) If you appealed, give the

      (1) Name of court:   APPELLATE COURT OF ILLINOIS, FIRST DISTRICT

      (2) Result:   AFFIRMED

      (3) Date of ruling:   JUNE 9, 2004

      (4) Issues raised:   trial courts sentence of Cortez Jones was excessive
   because the court failed to give adequate weight to mitigating
   factors

   (B) If you did not appeal, explain briefly why not:
           n/a

4. Did you appeal, or seek leave to appeal, to the highest state court?  YES ( )      NO (x )

   (A) If yes, give the

      (1) Result           n/a

      (2) Date of ruling:   n/a

      (3) Issues raised:   n/a

   (B) If no, why not:  APPELLATE COUNSEL DID NOT SEEK REVIEW TO HIGHEST COURT

5. Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes ( )   No (X )

   If yes, give (A) date of petition:  N/A       (B) date *certiorari* was denied:  N/A

## PART II -- COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES (X)   NO ( )

With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

A. Name of court:   CIRCUIT COURT OF COOK COUNTY, ILLINOIS

B. Date of filing:   SEPT. 22, 2004

C. Issues raised:  PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL BECAUSE COUNSEL FAILED TO SECURE THE EXONERATING TESTIMONY OF HIS CO-DEFENDANT, MICHAEL STONE.  (CONT..see exhibit ℬ )

D. Did you receive an evidentiary hearing on your petition?   YES ( )   NO (X)

E. What was the court's ruling?  FRIVOLOUS AND PATENTLY WITHOUT MERIT

F. Date of court's ruling:   12/21/04

G. Did you appeal from the ruling on your petition?   YES (X)   NO ( )

H. (a) If yes,   (1) what was the result?   AFFIRMED

              (2) date of decision:   SEPT. 26, 2006

   (b) If no, explain briefly why not:   N/A

I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES (X) NO ( )

   (a) If yes,   (1) what was the result?   DENIED

              (2) date of decision:   APRIL, 29, 2008

   (b) If no, explain briefly why not:   N/A

3

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?   YES (X)       NO (  )

   A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

     1. Nature of proceeding   SUCCESSIVE POST-CONVICTION

     2. Date petition filed   NOV.5, 2007

     3. Ruling on the petition   denied

     3. Date of ruling   1/11/08

     4. If you appealed, what was the ruling on appeal?   pending

     5. Date of ruling on appeal   pending

     6. If there was a further appeal, what was the ruling ?   n/a

     7. Date of ruling on appeal   n/a

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?   YES (  )   NO (X)

   A. If yes, give name of court, case title and case number:   N/A

   B. Did the court rule on your petition? If so, state

     (1) Ruling:   N/A

     (2) Date:   N/a

## 4. WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?

**YES (X)   NO (  )**

If yes, explain:   SUCCESSIVE POST-CONVICTION PETITION: CURRENTLY ON APPEAL
IN THE APPELLATE COURT OF ILLINOIS, FIRST DISTRICT

## PART III — PETITIONER'S CLAIMS

1. State <u>briefly</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one _____
Supporting facts (tell your story <u>briefly</u> without citing cases or law):

PETITIONER WAS DENIED HIS RIGHTS TO AN EFFECTIVE ASSISTANCE OF TRIAL

COUNSEL AS GANRANTEED BY THE UNITED STATES CONSTITUTION, amend. VI, XIV,

WHEN TRIAL COUNSEL FAILED TO SECURE THE EXONERATING TESTIMONY OF

CO-DEFENDANT MICHAEL STONE, AND PRESENT IT AT PETITIONER's TRIAL TO

ESTABLISH HIS INNOCENCE. (cont..see exhibit 1a)

(B) Ground two _____
Supporting facts:

PROSECUTION FAILED TO TURN OVER OR MAKE KNOWN HIGHLY EXCULPATORY

EVIDENCE THAT WOULD HAVE SHOWN THE PETITIONER WAS AND IS ACTUAL INNOCENCE

OF THE ALLEGED OFFENSE IN VIOLATION OF BRADY V. MARYLAND (cont.. see

exhibit 2b)

(C)  Ground three _____
     Supporting facts:

PETITIONER, CORTEZ JONES, WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE

PROCESS AND EQUAL PROTECTION OF THE LAWS GANRANTEED BY THE UNITED ████

 ̄STATES AND ILLINOIS CONSTITUTIONS, WHERE HE WAS DENIED HIS RIGHT

TO A FAIR COMPULSORY PROCESS DURING HIS PROCEEDINGS, WHERE THE PROSECUTING

ATTORNEY USED ███████ PERJURED TESTIMONY TO CONVICT TWO DEFENDANT'S

 FOR THE SAME CRIME BASED UPON INCONSISTENT IRRECONCILABLE THEORIES,

 WHEREBY VIOLATING PETITIONER"S DUE PROCESS RIGHTS (█████ (cont.. see EX. 3c)

(D)  Ground four _____
     Supporting facts:

 PETITIONER, CORTEZ JONES, WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE

 PROCESS AND EQUAL PROTECTION OF THE LAWS GANRANTEED BY THE UNITED STATES
CONSTITUTION, WHERE HE WAS ILLEGALLY PROSECUTED BY AN COUNTY EMPLOYEE

(COOK COUNTY ASSISTANCE STATES ATTORNEY) WHO WHILE SERVING AS A COOK

 COUNTY EMPLOYEE, WAS NOT ACTING AS A AUTHORIZED AGENT OR SERVANT OF

 THE STATE OF ILLINOIS (CONT..see exhibit 4d)

_____

_____

2   Have all grounds raised in this petition been presented to the highest court having jurisdiction?
        YES ( )   NO (X)

3.  If you answered "NO" to question (16), state briefiv wh~~    ~~~s were not so presented and why not:

_____        _____

_____  _ _   _____

## PART IV -- REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing ___UNKNOWN___

(B) At arraignment and plea ___BRAIN BOSCH___

(C) At trial ___BRAIN DOSCH___

(D) At sentencing ___BRAIN BOSCH___

(E) On appeal ___HEATHER SUTTON LEWIS___

(F) In any post-conviction proceeding ___PRO-SE: APPEAL ON P.C  DOUGLAS R. HOFF___

(G) Other (state): _____

## PART V -- FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO (XX)

Name and location of the court which imposed the sentence: ___N/A___

Date and length of sentence to be served in the future ___N/A___

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: ___7/3/08___
(Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

___CoRtEZ.JoneS___
(Signature of petitioner)

___R26113#___
(I.D. Number)

___P.O BOX 112 Joliet IL 60434___
(Address)

REVISED 01/01/2001

CONT... PAGE 6 #3

GROUNDS TWO, THREE AND FOUR WAS NOT PRESENTED TO THE HIGHEST STATE COURT.

GROUND II, WAS NOT PRESENTED TO THE HIGHEST STATE COURT, BECAUSE PETITIONER'S APPELLATE COUNSEL FAILED TO RAISE  THE CLAIM ON DIRECT APPEAL FROM THE COURT'S DISMISSAL OF PETITIONER'S POST-CONVICTION PETITION.

GROUNDS III AND IV, ARE CURRENTLY ON APPEAL IN THE APPELLATE COURT OF ILLINOIS, FIRST DISTRICT AND PETITIONER IF UNSUCCESSFUL ON APPEAL, PETITIONER WILL PRESENT THOSE CLAIMS TO THE HIGHEST STATE COURT.

CONTINUE...PART II COLLATERAL PROCEEDING

C. ISSUES RAISED

(2) THE PROSECUTION WITHHELD THE "EXONERATING TESTIMONY" OF HIS CO-DEFENDANT FROM THE DEFENSE.

Exhibit (B)

**CONTINUE...GROUND ONE**

CORTEZ JONES, MICHEAL STONE, MICHEAL CARTER WERE CHARGED WITH FIRST DEGREE MURDER ARISING FROM THE SEPT, 12, 1999 SHOOTING DEATH OF FRIDAY. GARDNER, STONE AND CARTER WERE CONVICTED AFTER A JURY TRIAL IN JUNE 2002.

IN A POST-CONVICTION PETITION, JONES ALLEGED THAT HIS TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESENT, CO-DEFENDANT, MICHAEL STONE'S TESTIMONY AT HIS TRIAL. THE CASE AGAINST STONE HAD GONE TO TRIAL IN JUNE OF 2002 MONTHS PRIOR TO JONES TRIAL. STONE TESTIFED IN HIS OWN DEFENSE, STATING THAT HE HAD FIRED ALL THE SHOTS AT FRIDAY GARDNER AND THAT HE ACTED IN SELF-DEFENSE, BECAUSE GARDNER HAD A GUN. STONE TESTIFIED THAT DURING THE CONFRONTATION FRIDAY PULLED A GUN, MICHAEL CARTER THEN PUSHED JONES BACK, STONE THEN SHOT FRIDAY, BECAUSE HE WAS SCARED FOR HIS BROTHER AND HIMSELF. STONE THEN FIRED THREE SHOTS THEN RAN, THROWING THE GUN IN THE BUSHES AS HE FLED. STONE TOOK RESPONSIBILITY FOR ALL THE SHOTS FIRED AT GARDNER. (SEE EXHIBIT) JONE'S ATTACHED STONES TESTIMONY AT TRIAL TO THIS PETITION:

HERE TRIAL COUNSEL'S FAILURE TO PRESENT STONE'S TESTIMONY UPSET THE ADVERSARIAL BALANCE OF THE TRIAL AND RENDERED IT UNFAIR. STONE'S TESTIMONY WOULD HAVE BEEN EXCULPATORY, SINCE STONE WOULD HAVE TESTIFIED THAT ONLY THREE SHOTS WERE FIRED AND HE FIRED ALL OF THEM. THIS WOULD HAVE BEEN CONSISTENT WITH THE PHYSICAL EVIDENCE PRESENTED BY THE PROSECUTION THAT ONLY THREE SHELL CASING WERE FOUND AT THE SCENE, AND THAT THE SHELL CASINGS WERE FIRED FROM A .38 CALIBER PISTOL, THE SAME GUN THAT STONE TESTIFIED HE USED. (SEE EXHIBIT) IT WOULD HAVE CONTRIDICTED THE STATE'S EVIDENCE THAT FOUR OR FIVE SHOTS WERE FIRED.

Exhibit 1(a)

STONE'S TESTIMONY WOULD HAVE BEEN DECIDEDLY MORE PERSUASIVE THAN
THE EVIDENCE THAT THE DEFENSE DID PRESENT, THE TESTIMONY OF LATONYA CHEEKS
AND MICHELE ADERSON. BOTH CHEEKS AND ANDERSON WERE SO THROUGHLY IMPEACHED
BY THEIR PRIOR INCONSISTENT STATEMENTS, INCLUDING THOSE MADE UNDER OATH TO
THE GRAND JURY AND AT STONE'S TRIAL, THAT THEIR CREDIBILITY WAS REDUCED TO
NEAR ZERO, ON KEY ISSUES—WHETHER GARDNER WAS ARMED AND WHO FIRED THE SHOTS
AT HIM—CHEEKS WAS CONFRONTED WITH HER PRIOR INCONSTSTENT STATMENT WHICH FLATLY
CONTRIDICTED HER TRIAL TESTIMONY. SIMILARLY, ANDERSON INCREDIBLY CLAIMED
AT TRIAL THAT JONES WAS NOT EVEN AT THE SCENE OF THE SHOOTING, WHICH NOT
ONLY CONTRIDICTED CHEEKS, BUT ALSO WAS DIRECTLY OPPOSITE OF WHAT SHE TESTIFIED
TO AT STONE'S TRIAL. SHE ALSO RATHER RIDICULOUSLY ASSERTED THAT GARDNER COULD
HAVE BEEN INVOLVED IN THE ARMED ROBBERY OF THE APARTMENT WHILE SIMULTANEOUSLY
CONCEDING THAT HE WAS HELPING HER CHASE THE ACTUAL ROBBERS.

THUS, THE ADVERSARIAL BALANCE IN THIS CASE WAS UPSET BY TRIAL COUNSEL'S
INEFFECTIVENESS, COUNSEL PRESENTED TESTIMONY FROM WITNESSES WHO WERE SO THROUGHLY
IMPEACHED THAT THEIR TESTIMONY WAS WORTHLESS, BUT COUNSEL FAILED TO PRESENT EVIDENCE
THAT WOULD HAVE PROVIDED A VIABLE DEFENSE. GIVEN THAT THE STATE'S WITNESSES
WERE ALSO IMPEACHED AND CONTRIDICTED EACH OTHER ABOUT MATTERS CENTRAL TO
THE CASE IN PARTICULAR HOW THE SHOOTING ACTUALLY HAPPENED, DEFENSE COUNSEL'S
FAILURE OT PRESENT STONE'S TESTIMONY CANNOT BE HARMLESS, AND JONES WAS INDEED
PREJUDICE BY COUNSEL'S PERFORMANCE.

MR. JONES RESPECTFULLY ASK THIS HONORABLE COURT TO GRANT SAID PETITION
ON THE GROUNDS THAT HE WAS NOT AFFORDED A FULL AND FAIR HEARING REGARDING
HIS CONSTITUTIONAL CLAIM IN STATE COURT. DURING THE FIRST STAGE OF JONE'S
POST-CONVICTION PROCEEDING THE COURT SUMMARILY DISMISSED JONES PETITION ALLEGING
THAT JONES DID NOT SUPPORT HIS ALLEGATION THAT STONE WOULD HAVE WAVIED HIS
FIFTH AMENDMENT RIGHT AND TESTIFIED AT HIS TRIAL. TESTIMONY THAT HE DID THE

SHOOTING WOULD THUS NOT HAVE EXONERATED JONES.

ON APPEAL, THE APPELLATE COURT AFFIRMED THE TRIAL COURT'S DISMISSAL OF JONE'S POST-CONVICTION PETITION. INITIALLY, THE COURT STATED THAT JONE'S CLAIM FAILED BECAUSE HE DID NOT ATTACH AN AFFIDAVIT INDICATING THAT STONE, THE WITNESS THAT WAS NOT CALLED TO TESTIFY ON BEHALF OF JONES, WAS READY AND WILLING TO TESTIFY. <u>PEOPLE V. CORTEZ JONES</u>, NO-1-05-1212 (1ST DIST. 9/26/06, RULE 23 ORDER AT 6.) THE COURT ALSO ASSERTED-WITHOUT POINTING TO ANYTHING IN THE RECORD AS SUPPORT-THAT IT "IS HIGHLY LIKELY THAT STONE WOULD HAVE INVOKED HIS FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION AND THUS BEEN UNAVAILABLE TO TESTIFY AT DEFENDANT TRIAL." JONES AT 8.

HOWEVER, THE COURT DID NOT ADDRESS THE ARGUMENT THAT JONES RAISED. IF STONE WAS WILLING TO TESTIFY AT TRIAL, THE TESTIMONY HE GAVE AT HIS OWN TRIAL WOULD HAVE BEEN ADMISSIBLE. SINCE JONES ATTACHED STONE'S TESTIMONY TO HIS POST-CONVICTION. (SEE EXHIBIT) HE DID NOT NEED AN AFFIDAVIT THAT STONE WAS WILLING TO TESTIFY FOR WHATEVER REASON, THIS RECORD OF HIS TESTIMONY COULD HAVE BEEN ADMITTED IN SUPPORT OF JONE'S DEFENSE.

IN IT'S DISENT, JUSTICE WOLFSON BELIEVED THAT JONES PETITION RAISED THE "GIST" OF A MERITORIOUS CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL. AND ENOUGH TO BRING JONES POST-CONVICTION PROCEEDING TO THE SECOND STAGE. ALSO THAT STONE'S FORMER TESTIMONY WAS ABOUT THE SAME KILLING JONES WAS CHARGED WITH, AND THE STATE HAD AMPLE OPPORTUNITY TO CROSS-EXAMINE STONE REGARDING THE SHOOTING AT HIS TRIAL. THAT JONE'S WOULD HAVE BEEN BETTER OFF HAD HE PRESENTED STONE'S TESTIMONY. AND BELIEVED UNDER THESE CIRCUMSTANCES WARRANT A CLOSER LOOK. (SEE EXHIBIT)

MR. JONES RESPECTFULLY ASK THIS HONORABLE COURT TO GRANT THIS PETITION

FOR A WRIT OF HABEAS CORPUS ON THIS CLAIM BECAUSE IT RESULTED IN A DECISION
THAT WAS BASED ON AN UNREASONABLE DETEMINTION OF THE FACTS IN LIGHT OF THE
EVIDENCE PRESENTED IN STATE COURT PROCEEDING ACCORDING TO 2254 (d) (1)-(2).

**CONTINUE...GROUND TWO**

COURTS HAVE FASHIONED RULES PROVIDING FOR THE DISCLOSURE OF CERTAIN TYPES OF EVIDENCE WHEN NESESSARY TO SAFEGUARD A DEFENDANT'S DUE PROCESS RIGHTS. BRADY V, MARYLAND, THE SUPREME COURT HELD THAT, "DUE PROCESS REQUIRES THE PROSECUTION TO DISCLOSE EVIDENCE FAVORABLE TO AN ACCUSED UPON REQUEST WHEN SUCH EVIDENCE IS MATERIAL TO GUILT OR PUNISHMENT." (BRADY 373 U.S. @ 87). SUBSEQUENT SUPREME COURT CASES, HOWEVER, HAVE ESTABLISHED THAT THE GOVERNMENT'S DUTY UNDER BRADY ARISES WHETHER OR NOT THE DEFENDANT SPECIFICALLY REQUEST THE FAVORABLE EVIDENCE. (U.S. V. AGURS, 427 U.S. 97, 107-11 (1976)). THE OBLIGATION TO DISCLOSE FAVORABLE EVIDENCE UNDER BRADY COVERS NOT ONLY EXCULPATORY EVIDENCE BUT ALSO INFORMATION THAT COULD BE USED TO IMPEACH GOVERNMENT WITNESSES.

THE GOVERNMENT'S OBLIGATION TO DICLOSE FAVORABLE EVIDENCE IS LIMITED TO EVIDENCE THAT IS MATERIAL TO THE DEFENDANT'S GUILT OR PUNISHMENT. (BRADY 373 U.S. AT 87). IN UNITED STATES V. BAGLEY, 473 U.S. 667 (1985), THE COURT HELS THAT, "EVIDENCE IS MATERIAL IF THERE IS A REASONABLE PROBABILITY THAT DISCLOSER OF THE EVIDENCE WOULD HAVE CHANGED THE OUTCOME OF THE PROCEEDING". THE QUESTION, AS THE COURT EXPLAINED IN KYLES V. WHITLEY, 514 U.S. 419 (1995), IS WHETHER IN THE ABSCENCE OF THE SUPPRESSED EVIDENCE THE DEFENDANT "RECEIVED A FAIR TRIAL". (KYLES 514 U.S. AT 434). THEREFORE, TO SHOW THAT "THE FAVORABLE EVIDENCE [WITHHELD] COULD REASONABLY BE TAKEN TO PUT THE WHOLE CASE IN SUCH A DIFFERENT LIGHT AS TO UNDERMINE CONFIDENCE IN THE VERDICT" Id @ 435.

PETITIONER ASSERTS THAT THE PROSECUTION WITHHELD EVIDENCE THAT IS OF SUCH AN EXCULPATORY NATURE, THAT CONFIDENCE IN THE

EXHIBIT 2 (b)

VERDICT HAS BEEN EGREGIOUSLY UNDERMINED. AS WITH THE DEFENDANT
IN BRADY, THE CO-DEFENDANT IN THE INSTANT CASE CONFESSED TO
COMMITTING THE CHARGED OFFENSE. HOWEVER, WHAT IS EXCEPTIONAL
IN THE INSTANT CASE, IS THAT THE CO-DEFENDANT CONFESSED UNDER
OATH, IN OPEN COURT UNDER CROSS-EXAMINATION BY THE PROSECUTION
(CO-DEFENDANT TR. N-237). THE PROSECUTION NEGLECTED TO MAKE
KNOWN THIS MATERIALLY FAVORABLE EXCULPATORY EVIDENCE. THIS EVIDENCE
BORE DIRECTLY ON PETITIONER'S GUILT. WITH THIS EVIDENCE THERE
IS A REASONABLE PROBABILITY THE OUTCOME OF THE TRIAL WOULD HAVE
BEEN DIFFERENT. IT MUST BE TAKEN INTO CONSIDERATION, LEGALLY,
THE BREADTH OF THE EVIDENCE. THE PROSECUTION CAN NOT OVERCOME
THIS INTENTIONAL VIOLATION OF BRADY, AND SHOULD NOT BE REWARDED
WITH A TAINTED CONVICTION. THE PROSECUTION STOOD SMUGGLY BEFORE
THE COURT AND ARGUED, WITH AUDACITY, FOR A FINDING OF GUILT,
KNOWING VERY WELL THE CO-DEFENDANT HAD CONFESSED TO KILLING
THE VICTIM IN SELF-DEFENSE. AND WITH BRAZEN CONTEMPT FOT THE
PROCESS, HID THIS EXCULPATORY EVIDENCE FROM THE DEFENSE.

DURING THE FIRST STAGE OF THE POST-CONVICTION PROCEEDING
THE COURT STATED AS BEFORE, MICHAEL STONE'S JURY TRIAL OCCURRED
IN JULY 2002. PETITIONERS TRIAL STARTED IN SEPT, 2002. MICHEAL
STONES TESTIMONY IS A MATTER OF PUBLIC RECORD AND THEREFORE,
FULLY ACCESSIBLE TO THE PETITIONER'S DEFENSE TEAM. FUTHERMORE,
THIS WOULD NOT HAVE CHANGED THE OUTCOME OF THE TRIAL, BECAUSE
THERE WAS A EYEWITNESS WHO SAW THE SHOOTING AND HE STATED THAT
HE SAW TWO PEOPLE SHOOT THE VICTIM. AND STONE'S TESTIMONY WOULD
NOT CHANGE THE FACT THAT ANOTHER WITNESS SAW THE PETITIONER
SHOOT AT THE VICTIM TOO. AND SUCH CLAIM IS WITHOUT MERIT. THE
COURT SUMMARILY DISMISSED THE PETITION WITHOUT AN EVIDENTARY HEARING.

THE ISSUE WAS NOT RAISED ON APPEAL IN THE APPELLATE COURT, COUNSEL FOR THE PETITIONER FAILED TO RAISE SUCH CLAIM. AND THEREFORE, THE ISSUE, WAS NOT PRESENTED TO THE HIGHEST STATE COURT. PETITIONER RESPECTFULLY ASK THIS HONORABLE COURT TO GRANT HIS, PRO-SE, PETITION FOR HABEAS CORPUS WHERE HE WAS NOT AFFORED A FULLY AND FAIR HEARING ON HIS CLAIM IN STATE COURT.

**CONTINUE...GROUND III**

PETITIONER, CORTEZ JONES WAS DENIED HIS CONSTITUTIONAL
RIGHT TO DUE PROCESS AND EQUAL PROTECTION OF THE LAWS GUARANTEED
HIM BY THE UNTIED STATES AND ILLINOIS CONSTITUTIONS, WHERE HE
WAS DENIED HIS RIGHT TO A FAIR COMPULSORY PROCESS DURING HIS
PROCEEDINGS, WHERE PROSECUTION ATTORNEY USED PERJURED TESTIMONY
TO CONVICT TWO DEFENDANTS FOR THE SAME CRIME BASED APON INCONSISTENT
IRRECONCILABLE THEORIES, WHEREBY VIOLATING PETITIONER'S DUE
PROCESS RIGHTS.

MR. JONES ASSERTS THE ERRORS SO COMMITTED UPSET THE ADVERSARIAL
BALANCE OF JUSTICE THEREBY VIOLATING HIS RIGHTS TO FUNDAMENTAL
FAIRNESS AND DUE PROCESS, RENDERING THE ARREST, TRIAL, PROSECUTION,
CONVICTION AND SENTENCE SUSPECT. SEE KIMMELMAN V. MORRISON,
477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed. 2d 305 (1986).
A NEW TRIAL IS REQUIRED ONLY IF THE NEWLY EVIDENCE DISCOVERED
CAN BE SHOWN TO BE MATERIAL AND OF SOME SUBSTANTIAL USE TO DEFENDANT.
U.S V. TOMALOLO, 378 F.2d 26, 28. IN THE CASE AT BAR, PETITIONER,
JONES PRESENTS MATERIAL EVIDENCE OF HIS ACTUAL INNOCENCE, SUPPORTED
BY SWORN AFFIDAVIT(S), ATTESTATION(S), ADMISSION(S), ARRESTING
STATEMENT(S), AND SWORN TESTIMONY OF ONE MICHEEL STONE [CO-DEFENDANT],
THE EVIDENCE MUST BE OF SUCH QUALITY AS WOULD LIKELY HAVE PRODUCED
AN ACQUITTAL AT TRIAL. UNTIED STATES V. ALEXANDER, 430 F.2d
906. SEE EXHIBIT'S MARKED HEREIN 5, 6, 7, AND 8. THE PETITIONER
ASKS THIS COURT TO CONSIDER AT LENGHT WHERE, CO-DEFENDANT STONE
TESTIFIED AT HIS OWN TRIAL, THAT [CO-DEFENDANT] CARTER PUSHED
[CO-DEFENDANT # 3] JONES AWAY FROM GARDENER [VICTIM], AND HE
[STONE] FIRED ALL (3) THREE SHOTS STRIKING AND KILLING MR. GARDENER,
WHICH CLEARLY CONTRADICTS THE STATES USE OF INCONSISTENT AND

EXHIBIT 3(c)

IRRECONCILABLE THEORIES OF ALL THREE DEFENDANTS AS THE SHOOTERS,
WHERE THERE WAS NO EVIDENCE, EXPERT, OR OTHERWISE, THE PETITIONER
HAD POSSESSION OF , OR HAD FIRED A GUN, ON SEPTEMBER 12, 1999,
EITHER BY FINGER PRINTS, PALM PRINTS, POWDER BURNS, OR OTHERWISE,
AND IN TOTAL, THERE WAS NO CIRCUMSTANIAL EVIDENCE PRESENTED,
EXHIBITS OR OTHERWISE DEMONSTRATIVE THAT THE PETITIONER WAS
GUILTY OF FIRST DEGREE MURDER. SEE EXHIBIT 9.

THE USE OF RERJURED TESTIMONY KNOWN TO BE SUCH BY
THE PROSECUTING ATTORNEY IS A DENIAL OF DUE PROCESS. MOONEY
V. HOLOHAN, 294 U.S. 103, 79 L.Ed 791, 55 S.Ct. 340, 98 ALR
406. PYLE V. KANSAS, 317 U.S. 213, 87 L.Ed 214, 63 S.Ct. 177,
WHITE V. RAGEN, 324 U.S. 760, 89 L.Ed 1348, 65 S.Ct. 978.

ANTONIO PHILLIPS, TOMMY GASTON AND RENE PHILLIPS,
THE STATE'S MAIN WITNESSES ALL WERE FOUND TO HAVE COMMITTED
PERJURY AND WERE SUBSEQUENTLY IMPEACHED WITH THEIR STATEMENTS
GIVEN IN POLICE REPORTS AND SWORN TESTIMONY BEFORE THE GRAND
JURY. THE PROSECUTOR KNOWINGLY AND INTELLIGENTLY IGNORED FACTS
WHICH CLEARLY EXCULPATED MR. JONES. NOTWITHSTANDING THE PROSECUTORS
DELIBERATELY CHOOSE WITNESS WHO WOULD TELL THE CONFLICTING STORY
THAT SHE NEEDED TO CONVICT EACH DEFENDANT. KNOWINGLY PUTING
ON FALSE EVIDENCE IS PROSECUTORIAL MISCONDUCT THAT VIOLATES
DUE PROCESS CLAUSE. NAPUE V. ILLINOIS, 360 U.S. 264, 269, 79
S.Ct. 1173, 3 L. Ed. 2d 1217 (1959).

MOREOVER, DRAWING ON THE PRINCIPLE THAT THE CONSTITUTION'S
"OVERRIDDING CONCERN[[IS] WITH THE JUSTICE OF THE FINDING OF
GUILT" ...SEVERAL SISTER COURTS HAVE FOUND THAT THE USE OF INCONSISTENT

IRRECONCILABLE THEORIES TO SECURE CONVICTIONS AGAINST MORE THAN
ONE DEFENDANT IN THE PROSECUTION FOR THE SAME CRIME VIOLATES
THE DUE PROCESS CLAUSE. SEE, eg., SMITH V. GROOSE, 205 F.3d
1045 (8TH CIR. 2000), THOMPSON V. CALDERON, 120 F.3d 1045 (9TH
CIR. 1997) (en banc) VACATED ON OTHER GROUNDS, 523 U.S. 538,
118 S. Ct. 1489, 140 L.Ed 2d.728 (1998), DRAKE V. KEMP, 762
F.2d 1449 (11TH CIR. 1985) (en banc), NICHOLOS V. SCOTT, 69
F.3d 1255 (5TH CIR. 1995).

THE PROSECUTOR'S THEORIES OF THE SAME CRIME IN THREE
(3) DIFFERENT TRIALS NEGATE ONE ANOTHER. THEY ARE TOTALLY INCONSISTENT.
THIS FLIP FLOPPING OF THEORIES OF THE OFFENSE WAS INHERENTLY
UNFAIR. UNDER THE PECULIAR FACTS OF THIS CASE THE ACTIONS BY
THE PROSECUTOR VIOLATES THE FUNDAMENTAL FAIRNESS ESSENTIAL TO
THE VERY CONCEPT OF JUSTICE... THE STATE CONNOT DIVIDE AND CONQURE
IN THIS MANNER. SUCH ACTIONS REDUCE CRIMINAL TRIALS TO MERE
GAMESMENSHIP AND ROB THEM OF THEIR SUSPOSED SEARCH FOR THE TRUTH.
THOMPSON, 120 F.3d @ 1059 (QUOTING DRAKE, F.2d @ 1479). AGAIN
THE CRUX OF THE CASE AT BAR, IS THE DELIBERATE PRESENTATION
OF FALSE EVIDENCE AND INCONSISTENT, IRRECONSILABLE THEORIES
VIOLATES PRINCUPLES OF DUE PROCESS; THE STATE'S DUTY TO IT'S
CITIZENS DOES NOT ALLOW IT TO PRUSUE AS MANY CONVICTIONS AS
POSSIBLE WITHOUT REGARD TO FAIRNESS AND THE SEARCH FOR TRUTH.

A DUE PROCESS CLAIM IS A MIXED QUESTION OF LAW AND
FACTS AND IS THEREFORE SUBJECT TO de novo REVIEW. SEE WILLIAMS
V. COYLE, 260 F.3d 684, 706-07 (6TH CIR. 2001). HERE, THE PROPER
STANDARD OF REVIEW IS WETHER THER IS A REASONABLE PROABILITY

THAT THE PROSECUTOR'S USE INCONSISTENT, IRRECONCILABLE THEORIES
RENDERED THE CONVICTION UNRELIABLE. SEE, eg,. id @ 706-07, <u>BRADY</u>
<u>V. MARYLAND</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 215 (1963).

PETITIONER FURTHER ASSERTS, HE WAS DENIED HIS CONSTITUTIONAL
RIGHTS, WHERE THE <u>SEPTEMBER 12, 1999</u>, ARREST AND CUSTODY OF
PETIOIONER BY CHICAGO POLICE   HAD AND ISSUED IN A CASE UNDER
CIRCUMSTANCES FOR WHICH NO "ARREST WARRANT" COULD ISSUE, AS
A MATTER OF DUE PROCESS, BASED UPON HEARSAY, UNSUPPORTED BY
ANY CORRBORATIVE FACTS OR EVIDENCE, WHEREAS PETITIONER'S CO-
DEFENDANT HAD TURNED HIMSELF IN AND <u>CONFESSED</u> FREE OF <u>DURESS</u>
TO THE SHOOTING DEATH OF MR. GARDENER.

Cont... GROUND IV

PETITIONER, CORTEZ JONES, ASSERTS THAT HE IS IMPRISONED
DUE TO THE ILLEGAL AND UNCONSTITUTIONAL PROSECUTION OF STATE
CRIMINAL CHARGES BY A COUNTY EMPLOYEE. MR. CORTEZ IS NOT CONTESTING
THAT HE IS IMPRISONED IN A STATE CORRECTIONAL FACILITY AFTER
BEING CONVICTED OF FIRST DEGREE MURDER, WHICH IS A STATE FELONEY
CHARGE NOT A COUNTY ORDIANCE OF COOK COUNTY, ILLINOIS.

FURTHERMORE, IT IS ALSO UNCONTESTABLE THAT, FOR MR. CORTEZ'S
SAID CONVICTION TO BE LEGAL, AS WELL AS CONSTITUTIONAL, HE MUST
HAVE BEEN PROSECUTED IN THE NAME OF THE PEOPLE OF THE STATE
OF ILLINOIS IN THE UNDERLYING CRIMINAL PROCEEDING, PEOPLE V. JONES,
00-CR-5388. WHAT MR. JONES DOES CONTEST IS THE FACT THAT HE WAS NOT
PROSECUTED BY ANY AUTHORIZED AGENT OR SERVANT OF THE STATE OF
ILLINOIS; INSTEAD, MR. JONES WAS PROSECUTED BY AN ATTORNEY WHO
IS ONLY AN EMPLOYEE OF COOK COUNTY, ILLINOIS, WHO DOES NOT REPRESENT
IN ANY OF HER OFFICIAL DUTIES AS A COUNTY EMPLOYEE. CONSEQUENTLY,
MR. JONES HAS BEEN CONVICTED OF STATE FELONY CHARGES AND IMPRISONED
IN A STATE CORRECTIONAL FACILITY. EVEN THOUGH HE HAS NEVER BEEN
PROVEN GUILTY OF ANY CRIMINAL ACTIVITY, AS CHARGED IN PEOPLE V. JONES,
00-CR-5388, BY THE STATE OF ILLINOIS OR ANY AUTHORIZED AGENT
OR SERVANT THEREOF. THE TITLE, AS APPLIED TO, ASSISTANT STATES
ATTORNEY IS A MISNOMER.

THE FACT THAT THE ASSISTANT STATES ATTORNEY IS ONLY AN
EMPLOYEE OF COUNTY (COOK COUNTY, ILLINOIS), WHICH IS NOT ACTING
AS AN AGENT OR SERVANT OF THE STATE OF ILLINOIS IN ANY OF HIS
OFFICAL DUTIES WAS BROUGHT TO LIGHT IN A ACTION COMMENCED IN
THE COURT OF CLAIMS (HOCKENBERRY V. DUFFY, NO. 94-CCO142) WHERE
THE PLAINTIFF HOCKENBERRY, IN THAT ACTION SOUGHT TO SUE THE

Exhibit 4(d)

STATES ATTORNEY, DUFFY FOR DAMAGES.

ASSISTANT STATES ATTORNEYYDUFFY, WAS REPRESENTED BEFORE
THE ILLINOIS COURT OF CLAIMS BY ATTORNEY GENERAL OF ILLINOIS
(ROLAND BURRIS), A MEMBER OF THE EXECUTIVE BRANCH OF ILLINOIS
STATE GOVERNMENT; (SEE, CONSTITUTION OF ILLINOIS (1970), ARTICLE
V. SECTION 1), WHO FILED A MOTION TO DISMISS, ARGUING, INTER
ALIA, THAT SAID COURT LACKIJURISDICTION OF "MATTERS AGAINST
COUNTY EMPLOYEES". A COPY OF SAID MOTION IS ATTACHED HERETO
AND MARKED AS EXHIBIT 3.

THEREFORE, A COUNTY STATES ATTORNEY IS A MEMBER OF THE
STATE JUDICIARY; NOT A MEMBER OF THE EXCUTIVE BRANCH OF ILLINOIS
STATE GOVERNMENT AND, CERTIANLY NOT VESTED WITH THE DISCRETIONARY
POWERS OF THE EXCUTIVE OFFICER.

MR. JONES CONCEDES THAT THE COURTS OF THIS STATE HAVE THE
INHERENT POWER TO INTERPRETTOUR CONSTITUTION OF 1970; HOWEVER,
PETITIONER RESPECTFULLY SUBMITS THAT,... THERE IS NO NEED FOR
INTERPRETATION WHERE THE WORDS ARE CLEAR, EXPLICIT AND UNAMBIGUOUS.
DEBRYAN V. ELROD, 418 N.E. 2d 413, 416, 49 ILL. DEC. 559, 563
(ILL. 1981); SEE ALSO BRIDGWATER V. HOTZ, 281 N.E. 2d 317, 51
ILL. 2d 103 (ILL. 1972); AND, AS THE LANGUAGE OF ARTICLE VI
(THE JUDICIARY), SEC. 19 (STATE'S ATTORNEY SELECTION, SALARY)
OF THE CONSTITUTION OF 1970, IS UNCONTESTABLY "CLEAR, EXPLICIT
AND UNAMBIGUOUS, "THAT PART OF" ...THE CONSTITUTION SHOULD BE
READ ACCORDING TO THE PLAIN MEANING OF THE LANGUAGE..."
COALITION FOR POLITICAL HONESTY V. STATE BOARD OF ELECTION,
64 ILL. 2d 453, 3 ILL. DEC. 728, 359 N.E. 2d 138 (1976).

MR. JONES FURTHER SUBMITS, THAT THE TAKING OF THE STATES ATTORNEY FROM THE JUDICIARY (ARTICLE VI, SEC. 19), TO THE EXECUTIVE (ARTICLE V) AND VESTING HIM/HER WITH THE DISCRETIONARY POWERS NECESSARY TO PROSECUTE CRIMINAL PROCEEDINGS MAY ONLY BE ACCOMPLISHED THROUGH THE AMENDMENT OF OUR PRESENT CONSTITUTION, WHICH ONLY THE LEGISLATION MAY INITIATE AND THE PEOPLE OF THE STATE OF ILLINOIS APPROVE... NOT THE COURT'S SEE, <u>CONSTITUTION OF THE STATE OF ILLINOIS</u> (1970), ARTICLE XIV, SEC. 2. IN UNCONTESTABLY CLEAR AND UNAMBIGUOUS LANGUAGE OF ARTICLE V OF THE CONSTITION OF 1970, WHICH IS THE SUPREME LAW OF THIS STATE, THE STATE'S ATTORNEYS OFFICE IS NOT EVEN MENTIONED, EVEN IN PASSING. IT'S THE APPELLATE COURT'S , THAT HAVE MADE THE STATES ATTORNEY A MEMBER OF THE EXECUTIVE BRANCH OF GOVERNMENT IN ILLINOIS AND VESTED THEM WITH THE DISCRETIONARY POWERS OF AND EXECUTIVE OFFICEE; NOT THE CONSTITUTION OF 1970 AND CERTIANLY NOT THE PEOPLE OF THE STATE OF ILLINOIS.

FOR THE AFOREMENTIONED REASON'S CORTEZ JONES, HAS BEEN INCARCERATED CONTINUOUSLY FOR SINCE SEPTEMBER 30 AND NOVEMBER 20, 2002 WITHOUT HAVING BEEN TAKEN TO TRIALKBY THE STATE OF ILLINOIS (THE REAL PARTY OF INTEREST IN THIS PROCEEDING), IN VIOLATION OF THE 5TH AND 6TH AMENDMENTS TO THE CONSTITUTION OF THE STATE OF ILLINOIS (MADE APPLICABLE BY THE 14TH AMENDMENT THEREOF); AS WELL AS ARTICLE I, SEC. 8 OF THE CONSTITUTION OF THE STATE OF ILLINOIS (1970).

MR. JONES CONTINUES TO BE IMPRISONED IN A STATE CORRECTIONAL FACILITY AFTER BEING CONVICTED OF STATE FELONY CHARGES; EVEN THOUGH HE HAS NEVER BEEN PROVEN GUILTY OF THE CRIMINAL CHARGES

IN PEOPLE V. JONES, 00-CR-5388, BY AN AUTHORIZED OFFICER OF
THE STATE OF ILLINOIS, IN VIOLATION OF THE 5TH, 6TH, AND 13TH
AMENDMENTS TO THE CONSTITUTION OF THE UNTIED STATES (MADE APPLICABLE
BY THE 14TH AMENDMENT THEREOF); AS WELL AS ARTICLE I, SEC. 2
OF TEH STATE OF IOOINOIS (1970).

    MR. JONES WAS AND CONTINUES TO BE DENIED HIS RIGHT TO BOTH
DUE PROCESS AND EQUAL PROTECTION OF THE LAWS, GUARANTEED HIM
BY THE 14TH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES
AND ARTICLE I, SEC. 2 OF THE CONSTITUTION OF THE STATE OF ILLINOIS,
(1970) BY THE UNCONSTITUTIONAL VIOLATION OF HIS RTGHTS WHERE
THE ASSISTANT STATE'S ATTORNEY, AN EMPLOYEE OF COOK COUNTY,
ILLINOLS, FRAUDULENTLY APPRARED AND REPRESENTED HERSELF AS AN
AUTHORIZED REPRESENTATIVE OF THE STATE OF ILLINOIS TO BOTH THE
COURT AND PETITIONERS IN THE CRIMINAL MATTER KNOWN AS PEOPLE
V. JONES, 00-CR-5388.

County of Will   )
                 )  SS
State Of Illinois

EXHIBIT
5#

### A F F I D A V I T

I, Michael Stone #R-18027, being first deposed upon sworn oath under penalties of perjury, do state the follow-ing facts as being true and correct to the best of my knowledge, personal observations, and belief:

1.  On the 12th of September, 1999; I was informed that the residence in which I lived had been robbed at gun point, forcibly invaded by someone from the neighborhood;

2.  I made several efforts to contact Michael Carter by phone and beeper, eventually reaching him and telling him what had taken place and he informed me that when he could he would come over to see what he could find out about the robbery;

3.  At no time was I aware as to exactly when Cortez jones arrived in my neighborhood, I was not aware of his presences until I overheard the argument that took place between him, Michael Carter and Friday Gardner;

4.  Cortez Jones did not conspire with me, nor did he form any specific plan or course of action about the matter other than looking into it; and he did not know that I had acquired a handgun or was armed during the time in which he was arguing with Friday Gardner;

5.  When I decided to retrive a gun that I had purchased , Cortez Jones had no knowledge of such action on my part, nor did he aid or abet me in any manner with respect to my subsequent actions that resulted in the shooting and death of Friday Gardner, this was as a result of my own individual will;

6.  It was and remains my personal belief and observation that Friday Gardner  was himself armed with a gun, and that his intent in pulling such weapon was to visit harm and/or death on Michael Carter, and Cortez Jones, therefore I fired several shots at friday Gardner that caused his death;

7.  Cortez Jones happen to have been presented because he was engaged in some sort of argument with Friday Gardner at the time of the shooting, and it was obvious that the nature of the argument led to Friday Gardner pulling the weapon, and I shot because I believed in was necessary in order to save Michael Carter's and Cortez Jones's life;

8.  At no time had I preplanned to shoot and kill Friday Gardner, my actions were in response to what I had observed and I acted on impulse;

9.  To the best of my knowledge and belief Cortez Jones was never armed with any sort of weapon and did not harm Friday Gardner in any manner; and

10.  I fully acknowledge being soley responsible for the shooting death of Friday Garder, without aid or assistance from anyone else and I have always maintained this position with respect to this unfortunate incident.

Sincerely,

Michael Stone #R-18027
Affiant


SWORN and SUBSCRIBED to before me

this 4th day of November , 2005 A.D.

Notary Public

"OFFICIAL SEAL"
Phyllis Baker
Notary Public State of Illinois
My Commission Exp. 01/21/2007

Michael Stone's Oral Statement
- ASA O'Reilly
Det. J. O'Brien

Stmt-Date: 09/14/1999 Time: 2:00 A.M.    Type: O
                          Wit:DET, ASA              Type:
CR:

AOR AND WAIVED, D STATED THAT ON 9-12-99 HE
LEARNED THAT HIS COUSIN FELICIA'S HOUSE HAD BEEN
ROBBED EARLIER IN THE DAY. D STATED THAT AFTER HE
FOUND OUT ABOUT IT HE PAGED HIS BROTHER MICHAEL
CARTER-WHO HE CALLS "JUNIOR". D STATED HE IS
CALLED "MAN". D STATED THAT JUNIOR CAME OVER TO
6102 S. MAY AND JUNIOR TALKED TO COREY WHO IS HIS
COUSIN'S BOYFRIEND. D STATED THAT COREY TOLD
JUNIOR WHAT HAPPENED. D STATED THAT JUNIOR LEFT
AND RETURNED LATER WITH CORTEZ WHO IS A FRIEND OF
JUNIOR'S. D STATED CORTEZ TALKED TO COREY AND
FOUND OUT COREY'S REEFER WAS TAKEN IN THE ROBBERY.
D STATED THAT CORTEZ TOLD COREY HE HAD BOUGHT THE
SAME KIND OF REEFER EARLIER THAT DAY FROM FRIDAY.
(IN THE SAME KIND OF PACKAGING). D STATES JUNIOR
AND CORTEZ LEFT AND HE STAYED THERE. D STATES THAT
LATER, WHILE HE WAS IN 6102 S. MAY HE COULD HEAR
FRIDAY YELLING AT SOME GUYS TAKING HIS RADIO FROM
HIS VAN. D STATED HE DOESN'T KNOW WHO WAS TAKING
THE RADIO. D STATES THAT LATER AFTER HEARING
FRIDAY YELLING ABOUT HIS RADIO HE HEARD FRIDAY
YELLING AGAIN-BUT ALSO HEARD HIS BROTHER-JUNIOR-
AND CORTEZ JONES ALSO YELLING. D STATED THAT WHEN
HE HEARD THE ARGUING HE WENT TO THE BASEMENT TO
GET HIS GUN. D STATED HE KEPT HIS GUN IN THE
RAFTERS OF THE BASEMENT CEILING. D STATED HE
BOUGHT THE GUN FOR $35.00 USC FROM A "HYPE" HE
KNOWS. D STATED HE KNEW THE GUN WAS LOADED BECAUSE
HE HAD CHECKED IT WHEN HE BOUGHT THE GUN. D STATED
HE RAN OUT OF THE BUILDING AND STOOD A LITTLE WAYS
AWAY FROM HIS BROTHER, CORTEZ, FRIDAY AND RENA WHO
IS A NEIGHBOR. D STATED AFTER A COUPLE OF MINUTES
OF WATCHING THE ARGUMENT HE SAW FRIDAY WITH A GUN
IN HIS HANDS AND SAW FRIDAY START TO POINT THE
GUN-SO HE SHOT FRIDAY. D STATED HE FIRED HIS GUN
3X'S. D STATED HE THEN RAN AWAY AND THREW THE GUN
IN SOME BUSHES AND TREES.

E X H I B I T # 6

1    for now and then bring the jury out, please.

2                    (Witness excused.)

3            (The following proceedings were had

4            in the presence of the jury.)

5    THE COURT:   Okay, thank you.   You may proceed,

6    call your next witness.

7    MR. JORDAN:   I call Michael Stone.

8                    (Defendant sworn.)

9                    MICHAEL STONE,

10   the defendant herein, called as a witness on his own

11   behalf, being first duly sworn, was examined and

12   testified as follows:

13                    DIRECT EXAMINATION

14                    BY  MR. JORDAN:

15   Q    State your name and spell your last name for

16   the record, please.

17   A    Michael Stone, S-t-o-n-e.

18   Q    Mr. Stone, how old are you?

19   A    Twenty.

20   Q    How far did you get in school?

21   A    Sophomore year.

22   Q    Now, back in September of 1999 where were you

23   living?

24   A    6102 South May.

1    Q    Well, what is he doing with the gun?

2    A    When they was arguing, when Cortez and Friday

3    ██████████████████████████████████████████████ and then

4    ██████████████████████████████████████████████ and then

5    ██████████████████████████████████████████████ another

6    ██████████████████████████ had the gun opened and that's

7    when I came out.

8    Q    Okay.   And you came out and fired three

9    shots at Friday?

10   A    Yes, ma'am.

11   Q    And you are running forward at this time?

12   ████████████████████████████████████████████████████████

13   Q    And you never moved?

14   A    No, ma'am.

15   Q    And Friday never got a single shot off back

16   at you, right?

17   A    No, ma'am.

18   Q    You were able to shoot him three times and

19   nobody fired back at you?

20   A    No, ma'am.

21   Q    And three shots are all the shots you heard?

22   A    Yes, ma'am.

23   Q    And a lot of Friday's family members were out

24   there, right?

E X H I B I T # 8

In The County of Cook )
                        )SS
State of Illinois       )

## AFFIDAVIT OF VERITY

I, Jeremiah McReynolds being first deposed upon his sworn oath under penalty of perjury, do freely and willfully attest to the following facts as being true and accurate to the best of his personal knowledge and belief, to wit:

1.  On the 12th of September, 1999 at approximately 10:00 p.m.; I personally observed from my first floor window at 61st and May, three individuals across the street hollering and gesturing at one another in a agitating manner;

2.  Such individuals were Junior (Michael Carter), a guy named Cortez Jones, and Friday Gardner. They were all arguing and from time to time they were all seen in the neighborhood;

3.  During what appeared to be a very heated argument, I observed Friday Gardner pull an object out from behind his back and then I heard several shots ring out from the alleyway;

4.  The individual firing the shots was known to me as "Man" and he lived in the neighborhood;

5.  I did not personally observe anyone else doing any shooting, and when the shooting was occurring the reaction of Junior (Michael Carter) and Cortez Jones was to scatter in an effort to avoid being shot;

6.  Friday Gardner was shot and he fell to the pavement as everyone around him fled from the scene;

7.  I later informed Latonya Cheeks that I had observed everything that had happened and that I would testify as a witness if called to go to court;

8.  Prior to the trial in regards to the shooting death of Friday Gardner I got into legal trouble and went to prison but I was released before the trial took place and notified Michael Carter's family that I was still available to give testimony about what I observed on the 12th of September, 1999;

9.  Sometimes during June of 2002; I was informed that Junior's (Michael Carter) Mother had contacted my family members and left word that I was on Junior's (Michael Carter's witness list), and that I would be called into court;

10.  Although I was available and in Chicago, Illinois at all times in which the trial was going on, no lawyer or anyone else from the court contacted me or called me as a witness about the facts that happened on September 12, 1999;

11.  If called into court to testify to the facts stated herein, I will appear and attest to such facts as being true and correct to the best of my personal knowledge and belief.

Respectfully,

*Jeremiah McReynolds*

Mr. Jeremiah McReynolds
AFFIANT

Sworn and Subscribed to before me

this 22nd day of March, 2006 A.D.

Notary Public

12·19·07

Commission Expiration Date

OFFICIAL SEAL
BARBARA RIDLEY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/19/07

Petitioner
Exhibits/

IN THE COURT OF CLAIMS
STATE OF ILLINOIS

RICHARD P. HOCKENBERRY, SR.    )
                               )
                Claimant,      )        No. 94 CC 0142
                               )
        v.                     )
                               )
DOLORES ANN DUFFY,             )
Assistant State's Attorney, an )
Officer of the State of Illinois, )
                               )
                Respondent.    )

MOTION TO DISMISS

NOW COMES ROLAND W. BURRIS, Attorney General of the State of Illinois and

hereby moves this Honorable Court, pursuant to 735 ILCS 5/2-615 of the Illinois Code of

Civil Procedure, to enter an order dismissing claimant's complaint. In support of its motion,

we state as follows:

That claimant is suing an Assistant State's Attorney as a result of conduct which

occurred during claimant's criminal trial. The claimant is not suing the State of Illinois nor

an employee of the State of Illinois.

The Court of Claims has jurisdiction for matters against the State of Illinois. Court of

Claims Act Sec. 8(a). The Court of Claims does not have jurisdiction for matters against

county employees. See Court of Claims Act Sec. 8.

E X H I B I T  #  3
PAGE 1 of 2

Petitioners/
PLAINTIFF'S
EXHIBIT

#____  ___

1 of 2 Page

Consequently, since the claimant names only an Assistant State's Attorney as the respondent this court lacks jurisdiction in this cause of action. We therefore move this court to dismiss this action with prejudice.

Respectfully submitted,

ROLAND W. BURRIS
Attorney General of Illinois

KENNETH H. LEVINSON
Assistant Attorney General
General Law Division
100 W. Randolph Street, 13th Fl.
Chicago, Illinois 60601
(3120 814-6131

2 of 2 Pages

STATE OF ILLINOIS
COURT OF CLAIMS
630 SOUTH COLLEGE
SPRINGFIELD, ILLINOIS 62756
------------------------------
(217) 782-7101

OGER A. SOMMER, CHIEF JUSTICE                          GEORGE H. RYAN

ANDY PATCHETT, JUDGE                                SECRETARY OF STATE
ORMA F. JANN, JUDGE                                  AND EXOFFICIO CLER
OBERT G. FREDERICK, JUDGE                         OF THE COURT OF CLAI
ICHARD T. MITCHELL, JUDGE
AVID A. EPSTEIN, JUDGE                             CHLOANNE GREATHOUSE
NDREW M. RAUCCI, JUDGE                                DEPUTY CLERK
                              JANUARY 04, 1995


HOCKENBERRY, RICHARD P., SR.-#N-93614
P.O. BOX 112
JOLIET, IL 60434-0112


RE:  94CC0142 - HOCKENBERRY, RICHARD P., SR.-#N-93614


     ENCLOSED YOU WILL FIND A COPY OF THE ORDER IN THE ABOVE
ENTITLED CAUSE, WHICH WAS HANDED DOWN BY THE COURT OF CLAIMS,
WHEREIN THIS CLAIM WAS DISMISSED.

                         SINCERELY,

                         CHLOANNE GREATHOUSE
                         DEPUTY CLERK

ENC.
CG: CS

CC: ATTORNEY GENERAL - CHICAGO
     COMM. WHIPPLE, JEFFREY T.


            E X H I B I T # 4          Petitioners/
               PAGE 2 of 2            PLAINTIFF'S
                                       EXHIBIT

                                     #_____
                                     1 of 2 Pages

OF THE STATE OF ILLINOIS

FILED
COURT OF CLAIMS

JAN - 4 1995

Secretary of State and
Ex-Officio Clerk Court of Claims

RICHARD P. HOCKENBERRY, SR.,       )
  Claimant,                             )
                                )
                                )
      -vs-                          )
                                )       No. 94-CC-0142
                                )
DOLORES ANN DUFFY, Assistant       )
State's Attorney, An Executive     )
Officer of the State of Illinois,  )
  Respondent.                         )

## O R D E R

  This matter having come before the Court on Claimant's Motion To Withdraw

Petition For Rehearing; Due and proper notice having been given; The Court

being advised in the premise; And it appearing to the Court that Claimant

agrees that the Respondent is only a county employee and that Claimant concedes

that as a county employee the Respondent is not acting as an agent or servant

of the State of Illinois, nor is she representing the State of Illinois in any

of her official duties as a county employee;

  IT IS THEREFORE ORDERED that Claimant's Motion To Withdraw Petition For

Rehearing is GRANTED and this Court's Order dismissing this matter for lack

of jurisdiction stands.

ENTER: _____
                  JUDGE, Court of Claims

Concurring: _____ J.

_____ J.

_____ J.

Entered:
The date stamped hereon is
the filing date of this Order.

PLAINTIFF'S
EXHIBIT

#_____
2 of 2 Pages

1  for now and then bring the jury out, please.

2  (Witness excused.)

3  (The following proceedings were had

4  in the presence of the jury:)

5  THE COURT:  Okay, thank you, you may be seated.

6  Call your next witness.

7  MR. JORDAN:  I call Michael Stone.

8  (Defendant sworn.)

9  MICHAEL STONE,

10  the defendant herein, called as a witness on his own

11  behalf, being first duly sworn, was examined and

12  testified as follows:

13  DIRECT EXAMINATION

14  BY MR. JORDAN:

15  Q    State your name and spell your last name for

16  the record, please.

17  A    Michael Stone, S-t-o-n-e.

18  Q    Mr. Stone, how old are you?

19  A    Twenty.

20  Q    How far did you get in school?

21  A    Sophomore year.

22  Q    Now, back in September of 1999 where were you

23  living?

24  A    6102 South May.

203

1       Q    From that group did anyone look in your

2    direction?

3       A    Yes.

4       Q    Who?

5       A    Friday.

6       Q    Is that Mr. Gardner?

7       A    Yes.

8       Q    Now, as the argument was going on what is

9    the -- did you see Mr. Gardner do anything unusual?

10      A    Yes.

11      Q    What did Mr. Gardner do?

12      A    I seen him pull out a gun.

13      Q    Could you illustrate for the ladies and

14   gentlemen of the jury how he drew that weapon?

15      A    (Indication.)  He drew it like this.

16   MR. JORDAN:   Indicating for the record,

17   your Honor, that he made a drawing motion from the

18   small of the back with his right hand.

19   THE COURT:   So indicated.

20   MR. JORDAN:

21      Q    Like this?  (Indication.)

22      A    Yeah.

23   THE COURT:   Indicating he is pointing forward not

24   upward.

1      MR. JORDAN:

2      Q    How did he draw the gun?

3      THE COURT:   Asked and answered.   Asked and

4   answered.

5           Ask another question.

6      MR. JORDAN:

7      Q    When he draws that gun what did you do?

8      A    I shot him.

9      Q    Why?

10     A    Because I was scared for my brother and me.

11     Q    How many times did you fire that weapon?

12     A    Three times.

13     Q    After you fired that weapon what did you do?

14     A    I ran.

15     Q    In what direction did you run?

16     A    West.

17     Q    Did you do anything with the gun?

18     A    Yes.

19     Q    What did you do with it?

20     A    I threw it in the bushes.

21     Q    What type of gun was it, by the way?

22     A    A .380.

23     Q    Where did you run to?

24     A    I ran to one of my friend's house.

NOTICE
The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

HOFF

SECOND DIVISION
September 26, 2006

EXHIBIT
9#

No. 1-05-1212

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 00 CR 5388 |
| CORTEZ JONES, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | John J. Moran, Jr., |
| | ) | Judge Presiding. |

## ORDER

This appeal arises from the trial court's summary dismissal of defendant Cortez Jones' *pro se* post-conviction petition in which he alleged his trial attorney was ineffective for failing to present the exculpatory testimony of codefendant, Michael Stone, at trial.

Defendant was convicted of first degree murder and sentenced to a 30-year prison term following a bench trial. His conviction and sentence were affirmed by this court on direct appeal, at which time he contended his sentence was excessive because the trial court failed to give adequate weight to mitigating factors. People v. Jones, No. 1-03-0352 (2004) (unpublished order under Supreme Court Rule 23).

Briefly stated, the evidence presented at trial established that on the afternoon of

1-05-1212

September 12, 1999, the victim, Friday Gardner, was in his cousin's (Antonio Phillips) apartment

at 61st and May Streets in Chicago when the next-door neighbor, Corey Grant, informed them he

had just been robbed while in his apartment. The victim and Phillips unsuccessfully tried to

apprehend the offender. At approximately 9 p.m. that night, the victim and Phillips saw three

men, who Phillips recognized as Michael Carter, Michael Stone, and defendant, taking a radio

from the victim's vehicle. Defendant and his cohorts left the scene but later returned, at which

time an argument ensued between defendant and the victim about the theft of the radio.

Codefendant Carter interrupted and accused the victim of having been involved in the earlier

burglary of Grant's apartment. While standing directly in front of the victim, defendant said,

"What [sic] you want to do then?" and took a step back and fired a shot at the victim. Tommy

Gaston, a witness to the shooting, heard four more shots as he ran and ducked behind a parked

car. Rene Phillips, the victim's aunt, testified she saw defendant pull a gun from his pocket and

fire two shots into the victim's stomach. She also saw codefendant Carter pull out a gun and

shoot.

Chicago police officer Cedric Taylor testified that while he and his partner were standing

outside the police station, which was around the corner from the scene of the shooting, they heard

gunshots and ran to the location where the shots were heard. They unsuccessfully chased two

offenders for 10 minutes. Defendant was subsequently arrested on January 21, 2000, and later

tried and convicted of first degree murder.

On direct appeal, defendant argued that the trial court's sentence was excessive in light of

mitigating factors such as the impulsive nature of the crime and his rehabilitative potential. This

1-05-1212

court disagreed, noting that the record indicated that the trial court considered a variety of factors including, but not limited to, defendant's age, character, rehabilitative potential, and the goal of deterrence. This court affirmed the conviction and sentence on the grounds that the trial court's sentence was not an abuse of discretion, and there was no indication that it improperly weighed the evidence.

Defendant subsequently filed a *pro se* post-conviction petition on September 22, 2004, in which he alleged he was denied the effective assistance of trial counsel, that the State failed to turn over and/or make known to him highly exculpatory evidence which would have established his innocence, that he was, in fact, innocent, and that his appellate counsel was ineffective for failing to raise these issues on appeal. Specifically, defendant alleged his trial counsel was ineffective in that he (1) provided "lethargic and incoherent representation," and (2) failed to secure the exonerating testimony of codefendant Stone and present it at trial to establish his innocence; that the State (1) withheld codefendant's exculpatory testimony from the defense and (2) failed to disclose ballistics evidence concerning the weapon used in the shooting; and that his appellate counsel was ineffective for failing to raise these issues in his direct appeal, as evidenced in a letter defendant received from the office of the State Appellate Defender, which was attached to the post-conviction petition.

The trial court summarily denied defendant's post-conviction petition in a written order on December 21, 2004, in which it concluded that defendant's ineffective assistance of trial counsel claim failed because he had not provided the court with any documentation demonstrating that had codefendant Stone been given the opportunity, he would have waived his fifth amendments

1-05-1212

and testified on defendant's behalf and taken the blame for the shots fired, nor did the petition

contain any facts supporting defendant's contentions. The court also noted there were

eyewitnesses to the shooting who identified defendant as one of the shooters, so even if

codefendant Stone had testified, his testimony would not have absolved defendant of the crime.

As to defendant's contention that the State withheld exculpatory evidence from the defense, the

trial court noted that codefendant's trial occurred in July 2002, several months prior to

defendant's trial, and that codefendant's testimony was a matter of public record and was,

therefore, fully accessible to the defense, but the evidence would not have been beneficial to

defendant as previously noted. Finally, as to defendant's contention that his appellate counsel was

ineffective for failing to raise these issues on direct appeal, the trial court concluded that

defendant was not prejudiced because the issues were not meritorious.

On appeal, defendant contends the trial court erred when it summarily dismissed his post-

conviction claim that his trial attorney was ineffective for failing to present the testimony of

codefendant Stone, and that his appellate attorney was ineffective for failing to raise this issue in

his direct appeal.

The Post-Conviction Hearing Act (Act) allows a defendant to collaterally challenge his

conviction or sentence for violations of federal or state constitutional rights. 725 ILCS 5/122-1 *et*

*seq.* (West 2004); People v. Montgomery, 192 Ill. 2d 642, 653-54 (2000). Proceedings under

the Act are commenced by the filing of a petition in the circuit court in which the conviction

occurred. 725 ILCS 5/122-1(b) (West 2004). The petition must identify the proceedings in

which the conviction occurred, state the date of the contested final judgment, and clearly identify

the alleged constitutional violations. 725 ILCS 5/122-2 (West 2004). In addition, the petition

-4-

1-05-1212

must be both verified by affidavit (725 ILCS 5/122-1(b) (West 2004)) and supported by

"affidavits, records, or other evidence" (725 ILCS 5/122-2 (West 2004)). If such "affidavits,

records or other evidence" are unavailable, the petition must explain why. 725 ILCS 5/122-2

(West 2004).

     The Act establishes a three-stage process for adjudicating a petition for post-conviction

relief. 725 ILCS 5/122-1 *et seq.* (West 2004). At the first stage, the court is required to

independently review the post-conviction petition within 90 days of its filing and determine

whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West

2004). If the circuit court determines that the petition is either frivolous or patently without merit,

it "shall dismiss the petition in a written order." 725 ILCS 5/122-2.1(a)(2) (West 2004). The

failure to either attach the necessary "affidavits, records, or other evidence" or explain their

absence is "fatal" to a post-conviction petition and alone justifies the petition's summary dismissal.

People v. Collins, 202 Ill. 2d 59, 66 (2002).

     Whether the petition and any accompanying documents make a substantial showing of a

constitutional violation is a second-stage inquiry. People v. Edwards, 197 Ill. 2d 239, 245-46

(2001). If at the second stage a substantial showing of a constitutional violation is set forth, the

petition is advanced to the third stage for an evidentiary hearing. 725 ILCS 5/122-6 (West 2004).

     Defendant's petition was dismissed at the first stage. At the first stage of the proceedings,

the trial court's initial examination of the petition is only to determine whether the petition is

frivolous or patently without merit, and if it so finds, to summarily dismiss the petition. 725 ILCS

5/122-2.1(a)(2) (West 2004). Thus, the issue before us is whether defendant's petition is

frivolous or patently without merit (Edwards, 197 Ill. 2d at 247). The sufficiency of the

-5-

1-05-1212

allegations contained in a post-conviction is reviewed *de novo* (People v. Coleman, 183 Ill. 2d

366, 388-89 (1998)).

Defendant contends the trial court erred in summarily dismissing his *pro se* post-

conviction petition because it raised the gist of a meritorious claim of ineffective assistance of trial

counsel for his failure to present the exculpatory testimony of codefendant Stone, and ineffective

assistance of appellate counsel for the failure to raise this issue on direct appeal. Attached to

defendant's petition is his sworn verification as required by the Act (725 ILCS 5/122-1 (West

2004)), a copy of a letter from the office of the State Appellate Defender advising him of issues to

raise in his *pro se* petition, and a photocopy of what appears to be a portion of a report of

proceedings containing codefendant Stone's testimony. However, defendant's petition does not

contain an affidavit from codefendant Stone indicating he would have been willing to testify or

what the substance of that testimony would have been.

We find the trial court properly dismissed defendant's *pro se* post-conviction petition

inasmuch as it was unsupported by codefendant Stone's affidavit that he was available for trial

and would have been willing to testify, and that his testimony would have been the same as at his

own trial.[1]  This fact alone justifies the summary dismissal of defendant's petition.  See Collins,

202 Ill. 2d at 66.

Ineffective assistance of counsel is established when a defendant demonstrates that

counsel's representation fell below an objective standard of reasonableness and that, but for

---

[1]Codefendants Stone and Carter, who are brothers, were tried separately in a joint jury
trial, after which they were both convicted of first degree murder and sentenced to 30 years'
imprisonment.

1-05-1212

counsel's shortcomings, the outcome of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).  Both prongs of the Strickland test must be satisfied before a defendant can prevail on a claim of ineffective assistance of counsel.  People v. Frieberg, 305 Ill. App. 3d 840, 849 (1999).  Courts can resolve ineffectiveness claims by reaching only the prejudice component because lack of prejudice renders counsel's performance irrelevant.  Frieberg, 305 Ill. App. 3d at 849-50.

Effective assistance of counsel refers to competent, not perfect, representation.  People v. Odle, 151 Ill. 2d 168, 173 (1992).  Accordingly, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "  Strickland, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065, quoting Michel v. Louisiana, 350 U.S. 91, 101, 100 L. Ed. 83, 93, 76 S. Ct. 158, 164 (1955).  The reasonableness of trial counsel's actions must be evaluated from counsel's perspective at the time of the alleged error, without hindsight, in light of the totality of circumstances and not just on the basis of isolated acts.  People v. Albanese, 104 Ill. 2d 504, 525 (1984).

Considering defendant's contention of error under Strickland, counsel's failure to call codefendant Stone as a witness is a matter of trial tactics or strategy, which is purely a matter of professional judgment and cannot support a claim of ineffective representation.  See People v. Greer, 79 Ill. 2d 103, 122  (1980).  The decision of what defense theory to present is a matter of trial strategy which ultimately is decided by trial counsel (People v. Ramey, 152 Ill. 2d 41, 53 (1992); People v. Gill, 264 Ill. App. 3d 451, 462 (1992)), and is generally immune from

-7-

1-05-1212

ineffective assistance of counsel claims (People v. Guest, 166 Ill. 2d 381, 394 (1995)). The only

exception to this rule is when counsel's chosen trial strategy is so unsound that "counsel entirely

fails to conduct any meaningful adversarial testing." Guest, 166 Ill. 2d at 394.

In the case at bar, defendant was not prejudiced by his trial counsel's decision not to call

codefendant Stone as a witness because there is no indication that codefendant Stone would have

testified at defendant's trial while his own appeal was pending, if at all. It is highly likely that

Stone would have invoked his fifth amendment right against self-incrimination and thus been

unavailable to testify at defendant's trial. Contrary to defendant's position, we agree with the

State that a defendant continues to enjoy the right to remain silent until all of his appellate and

collateral attacks against the conviction and sentence are exhausted. See People v. Edgeson, 157

Ill. 2d 201, 220-23 (1993); People v. Dmitriyev, 302 Ill. App. 3d 814, 817-20 (1998). Further,

Stone's prior testimony was inadmissible hearsay and would not have been admitted. Finally, we

note there were several eyewitnesses to the shooting who testified that defendant was the person

arguing with the victim and the first person to draw a gun and shoot the victim, which would have

diminished the effectiveness of Stone's prior testimony had it been admissible. Therefore, the

outcome of the trial would not have been different had counsel attempted to present the testimony

of codefendant Stone.

It necessarily follows that appellate counsel was not ineffective for failing to raise a non-

meritorious issue on direct appeal. Therefore, we conclude the trial court properly dismissed

defendant's *pro se* post-conviction at the first stage.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

SOUTH, J., with HOFFMAN, J., concurring; WOLFSON, P.J., dissenting.

-8-

1-05-1212

PRESIDING JUSTICE WOLFSON, dissenting:

I dissent because I believe Jones' petition raised the gist of a meritorious claim of ineffective assistance of counsel. It was at least enough to bring these post-conviction proceedings to the second stage.

Whether Stone would have been willing to testify at the defendant's trial is a matter that can be sorted out at a later stage. What if he did refuse? We should not brush off the notion that his trial testimony could have been used. He would have become an unavailable witness. See People v. Johnson, 118 Ill. 2d 501, 508-09 (1987). His former testimony was about the same killing Jones was charged with, and the State had ample opportunity to cross-examine him about the shooting at his trial. This is a well-recognized exception to the rule against hearsay. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence, §804.2 (7th ed. 1999).

Certainly, Jones would have been better off had he presented Stone's testimony. Two of his witnesses testified they saw Stone fire the shots. The number of cartridges found at the scene, three, is consistent with Stone's testimony and inconsistent with the testimony of some of the State's witnesses.

We should consider the contradictory nature of the State's position. The State charged Stone with firing the fatal shots.

9

1-05-1212

Stone admitted he fired those shots, but claimed he did so in self defense.  At that trial, the State never suggested someone other than Stone fired those shots.  At Jones' trial, the State's theory underwent a transformation.  There, it was Jones who fired the shots, not Stone.  The State had it both ways and obtained two convictions.

I believe the circumstances warrant a closer look.

10