CORTEZ JONES,

    Petitioner,

        v.

SCOTT MCKEE,

    Respondent.

No. 08 CV 4429
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

## I.  BACKGROUND

Following a bench trial in 2002, the Circuit Court of Cook County, Illinois found Petitioner Cortez Jones ("Jones") guilty of first degree murder for the 1999 shooting death of Friday Gardner.  *See People v. Jones*, No. 1-03-0352 (Ill. App. Jun. 9, 2004).  Jones was sentenced to 30 years in prison.  *Id.*  Jones now petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  While I find that Petitioner's claims are procedurally defaulted, Petitioner may succeed in demonstrating that his ineffective assistance of counsel claim are preserved for review pursuant to the miscarriage-of-justice exception.  For the reasons set forth below, I find that a hearing on the issue of Petitioner's actual innocence is warranted in this case.

---

[1] The named respondent in this habeas action was originally Terry McCann, but since filing his petition, Petitioner was transferred to the Western Illinois Correctional Center, where Scott McKee is the acting warden.  Thus, Scott McKee is substituted as the named respondent pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts and Fed. R. Civ. P. 25(d).

## A. State Court Trial

At trial, it was not disputed that Jones was present at the intersection of South May Street and West 61st Street, where Friday Gardner was shot, but witnesses presented various accounts as to Jones's involvement in the shooting. State's witness Antonio Phillips ("Antonio"), the cousin of the victim Friday Gardner ("Gardner"), testified that around 9:00pm on September 12, 1999, Antonio was standing at his apartment window and saw three men taking the victim's radio out of his van near the intersection of South May Street and West 61st Street. Antonio recognized these three men as Michael Carter ("Carter"), Michael Stone ("Stone"), and Petitioner Jones. The three men left the scene, but Antonio testified that later in the evening, Carter and Jones returned to the scene and began arguing with Gardner. Antonio testified that he saw Cortez Jones pull a gun from his pocket and shoot Gardner. Antonio testified that the gun was an inch away from the victim. Antonio ran downstairs and testified that as he ran, he heard two more shots, and then "like three more." He testified that the second set of gunshots was louder than the first set. Antonio also testified that Carter had a gun but that Antonio was not sure if Carter shot at the victim. On cross-examination, Antonio clarified that he heard five shots total, but could not account for when he heard the fifth shot. (See Tr. of R. for Appeal, I22-47.)

Lessy Rene Phillips ("Rene"), the mother of Antonio Phillips, lived near the intersection of 61st and May Street and testified that at around 10:00 or 10:30pm on the night of September 12, 1999, she observed Friday Gardner and his friend, Tommy Gaston, standing outside. Rene testified that Carter and Jones arrived at the scene and began arguing with the victim. According to Rene, Jones took a gun out of his pocket and shot the victim two times and then Michael

Carter pulled out a gun and started shooting as well. According to Rene, the gun was "2 or 3 steps back" from the victim. (See Tr. of R. for Appeal, I68-81.)

Tommy Miller Gaston ("Gaston"), a friend of the victim testified that he also witnessed the argument between the victim, Carter, and Jones. Gaston testified that Jones wore a turquoise jacket. According to Gaston, when the argument escalated, Jones fired a shot through his jacket pocket at the victim. Gaston stated he then heard four more shots as he ran and ducked behind a parked car. Gaston said that as he ran, he looked back and saw Jones holding a gun.[2] Gaston further testified that the first shot he heard sounded low but the others were louder. In total, Gaston stated that he heard five shots ring out. (See Tr. of R. for Appeal, I48-67.) Gaston denied ever talking to police and denied ever telling the police that "a guy who lives upstairs with Corey was standing in the alley [and] he started shooting at Friday." (Tr. of R. for Appeal, I62.) Later in the trial, however, the parties stipulated that Detective John Murray of the Chicago Police Department would have testified that he talked to Gatson, who told the detective that "the guy who lives upstairs with Corey was standing in the alley [and] . . . he started shooting at Friday."[3] (Tr. of R. for Appeal, L48-49.)

Officer Cedrick Taylor ("Taylor") of the Chicago Police Department testified that on September 12, 1999 at around 10:00pm, he was standing outside of the Englewood Police Station when he saw two "muzzle flashes," the high-pressure gases from the muzzle of a firearm

---

[2] Gaston's testimony on this point is unclear. He stated that he saw Jones "with the gun in his hand" but also testified that he "didn't see him pull it out [of his pocket]. He had his hand in the coat pocket all the time." (Tr. of R. For Appeal, I-64.)

[3] The testimony of Antonio Phillips revealed that Michael Stone, whose nickname was "man," lived with the Phillips's next-door neighbors Corey and Felicia. (Tr. of R. For Appeal, I-23, I-40.)

that are visible when a firearm is discharged.  After seeing the muzzle flashes, Officer Taylor heard three more shots ring out.  Taylor then ran in the direction of the shots, and as he ran, he saw a man running in the street wearing a blue jacket with a dark object that could have been a gun in his hand.  Taylor chased the man, but did not capture him.  (See Tr. of R. for Appeal, I7-22.)

Defense witness Latonya Cheeks ("Cheeks"), cousin of Michael Carter and Michael Stone, testified that she was cooking in her sister's apartment at 6102 South May when she heard an argument outside.  She looked out and saw Rene, Gardner, Carter, and Jones outside.  She testified that: "all [she] heard was shooting" and "all [she] [knew] is Michael Stone shot him." She also testified that Gardner had a gun, but at trial, she was impeached with her prior testimony that Gardner did not have a gun.  She further stated that she did not see Jones stealing Gardner's radio from his van, but she was again impeached with her prior testimony stating that she had observed Jones taking the radio from the van. (See Tr. of R. for Appeal, L3-27.)

Michele Andersen, also a cousin of Carter and Stone, testified that during the argument in the street, Gardner pulled a gun and then a "guy from the alley" shot Gardner two or three times. She stated at trial that she did not see Jones at the scene of the shooting that night, but was impeached with her prior testimony stating that she did see Jones there.  (See Tr. of R. for Appeal, L27-46.)

In addition to live testimony, the state trial court accepted into evidence a stipulation that if Cal Brasic, forensic investigator with the Chicago Police Department, were to testify, he would state that he recovered three semi-automatic cartridge casings from a Winchester 380 in the middle of the street outside 6106 South May. (Tr. of R. for Appeal, I87.)  Furthermore, the court

accepted into evidence a certified copy of a protocol detailing an autopsy on Friday Gardner, numbered Case 230 and dated September 1999. (Tr. of R. for Appeal, I88.) Neither the protocol nor the full autopsy was included in the record submitted to this court.[4]

After a bench trial, Jones was convicted of first-degree murder. He appeared for his sentencing hearing on December 20, 2002 alongside Carter and Stone. Carter and Stone had also been found guilty of first-degree murder for the shooting death of Friday Gardner. Stone had admitted to shooting and killing the victim, but argued that he did so in self-defense. At the joint sentencing hearing, the State's attorney argued, "all three [defendants] shot . . . [t]here's no alternative theories . . . all three of these men were armed, and they all pulled the trigger, and they are all responsible for the death of Friday Gardner." (Tr. of R. for Appeal, N12.) The court sentenced Jones, Stone, and Carter to thirty years each in the Illinois Department of Corrections.

**B. Direct Appeal**

Jones made a direct appeal to the Illinois Appellate Court contending that his sentence was excessive. The Illinois Appellate Court, First Judicial District, affirmed Jones's conviction and sentence. *People v. Jones*, No. 1-03-0352 (Ill. App. Jun. 9, 2004). Jones did not file a petition for leave to appeal ("PLA") to the Illinois Supreme Court.

---

[4] Although the protocol and full autopsy were not included in the record submitted to this court, what appears to be the second page of the autopsy, numbered Case 230, was attached to a copy of a successive post-conviction petition, which was submitted as a State's exhibit to this court. The second page of this report details two injuries on the victim's body: one gunshot wound on the right lower abdomen and another on the right side of the chest. (Mem. in Supp. of Successive Pet. for Post-Conviction Relief, Ex. 9 at 4.) Two bullets were recovered from the victim. *Id.* It is undisputed that there was no evidence of close-range firing. (Tr. of R. For Appeal, L-68.)

**C. Post-Conviction Petitions**

Jones subsequently filed a pro se post-conviction petition under the Illinois

Post-Conviction Hearing Act, 725 ILL. COMP. STAT. 5/122-1, *et. seq*., alleging: (1) that his trial

counsel was ineffective for failing to secure the exonerating testimony of Michael Stone in which

Stone admitted that he killed the victim in self-defense, (2) that the prosecution withheld the

"exonerating testimony" of Stone, and (3) that his appellate counsel was ineffective for not

raising the above claims on direct appeal. (Pet. for Post-Conviction Relief, 3-4.) Jones attached

a segment of the transcript from Stone's trial, in which Stone admitted to shooting Gardner three

times. (Pet. for Post-Conviction Relief, 3-4.) The Circuit Court dismissed the petition, finding

that the claims raised by Jones were frivolous and patently without merit. *People v. Jones*, No.

00-CR-05388-01 (Cir. Ct. Cook County Dec. 21, 2004). Jones appealed, and the Illinois

Appellate Court, First District, affirmed the dismissal. *People v. Jones*, No. 1-05-1212 (Ill. App.

Sep. 26, 2006). In affirming, the Illinois Appellate Court wrote:

> The failure to either attach the necessary 'affidavits, records, or other evidence' or explain their absence is fatal to a post-conviction petition and alone justifies the petition's summary dismissal. . . . [Petitioner]'s petition does not contain an affidavit from codefendant Stone indicating he would have been willing to testify or what the substance of that testimony would have been. . . . We find the trial court properly dismissed [Petitioner]'s pro se post-conviction petition inasmuch as it was unsupported by codefendant Stone's affidavit that he was available for trial and would have been willing to testify, and that his testimony would have been the same as at his own trial. This fact alone justifies the summary dismissal of defendant's petition.

*Id*. at 6.

The Court also reviewed the merits of Petitioner's claim, and found that he was not

prejudiced by his trial counsel's decision not to call Stone "because there is no indication that

codefendant Stone would have testified at [petitioner's] trial while his own appeal was pending, if at all." The Court found it to be "highly likely" that Stone would have invoked his Fifth Amendment right against self-incrimination and refused to testify at Petitioner's trial; Stone's prior testimony would have been inadmissible hearsay.[5] Finally, the Court noted the testimony of several eyewitnesses who testified that Petitioner drew his gun and fired at the victim, finding that Stone's testimony, even if it had been admitted, would not have changed the outcome of the trial.

Justice Wolfson dissented, stating, "Jones' petition raised the gist of a meritorious claim of ineffective assistance of counsel." *Id.* at 9 (Wolfson, PJ, dissenting). Justice Wolfson reasoned that an affidavit that Michael Stone was willing to testify was not necessary because had Stone refused to testify, he would have become an unavailable witness, and his former testimony could be admitted as an exception to the hearsay rule. *Id.* Justice Wolfson went on to say that:

> Certainly, Jones would have been better off had he presented Stone's testimony. Two of his witnesses testified they saw Stone fire the shots. The number of cartridges found at the scene, three, is consistent with Stone's testimony and inconsistent with the testimony of some of the State's witnesses. . . . We should consider the contradictory nature of the State's position. The State charged Stone with firing the fatal shots. Stone admitted he fired those shots, but claimed he did so in self defense. At that trial, the State never suggested someone other than Stone fired those shots. At Jones' trial, the State's theory underwent a transformation. There it was Jones who fired the shots, not Stone. The State had it both ways and obtained two convictions.

*Id.*

---

[5] The majority opinion did not address whether the hearsay testimony might have been admissible pursuant to a hearsay exception.

Cortez Jones filed a PLA in the Supreme Court of Illinois arguing only that his trial counsel was ineffective for failing to call Stone as a witness. His PLA was denied. *People v. Jones*, No. 104094 (Ill., Mar. 26, 2008).

Jones then filed a successive post-conviction petition, claiming that he had been illegally prosecuted by a county employee who was not an authorized agent of the State of Illinois and that his constitutional rights were violated because the State used inconsistent theories and perjured testimony to convict two defendants for the same crime. (See Pet. for Leave to File Pet. for Post-Conviction Relief, 2.)

In support of his successive post-conviction petition, Jones attached an affidavit sworn by Michael Stone in which Stone stated that he shot the victim and caused his death. Stone further stated that he was "solely responsible for the shooting death of Friday Gardner" and that to his knowledge, Jones was never armed and did not harm the victim in any manner. (Mem. in Supp. of Pet. for Post-Conviction Relief, Ex. 5.) Jones also attached a document entitled "Michael Stone's Oral Statement - ASA O'Reilly, Det. J. O'Brien," dated September 14, 1999, in which Stone stated he fired his gun three times at the victim. (Mem. in Supp. of Pet. for Post-Conviction Relief, Ex. 6.) Jones also attached an affidavit sworn by Jeremiah McReynolds ("McReynolds") in which McReynolds stated that he was a witness to the shooting, that the victim pulled an object from behind his back, and that he heard several shots ring out from the alleyway. (Mem. in Supp. of Pet. for Post-Conviction Relief, Ex. 8.) McReynolds further stated that the person firing the shots from the alleyway was a person named "Man" [Michael Stone's nickname] and that McReynolds did not observe anyone else doing any shooting. *Id.*

In addition, Jones attached a Forensic Report prepared by the Illinois State Police Division of Forensic Services listing evidence received in relation to Gardner's murder. The report lists three "Winchester 380 Auto caliber fired cartridge cases," which "could not be identified or eliminated as having been fired from the same firearm," as well as one fired 380/9 mm caliber bullet. (Mem. in Supp. of Pet. for Post-Conviction Relief, Ex. 9 at 1.) Jones also attached what appears to be the second page of the autopsy performed on the victim, numbered Case 230. The second page of this report details two injuries on the victim's body: one gunshot wound on the right lower abdomen and another on the right side of the chest. The report states that there was no evidence of close range firing. (Mem. in Supp. of Pet. for Post-Conviction Relief, Ex. 9 at 4.) Jones's successive post-conviction petition was denied for failure to meet the cause and prejudice standard required by the Illinois Post-Conviction Hearing Act, 725 ILL. COMP. STAT. 5/122-1(f). *State v. Jones*, No. 00-CR-5388 (Cir. Ct. Cook County Jan. 11, 2008). Jones appealed, and the denial was affirmed. *State v. Jones*, No. 1-08-1781 (Ill. App. Ct. Jun. 16, 2009).

## D. Federal Habeas Corpus Petition

Jones then filed a petition for habeas corpus relief in this court pursuant to 28 U.S.C. § 2254 followed by an amended petition. Jones's amended petition raises the following claims: (a) that Petitioner was denied effective assistance of counsel when trial counsel failed to obtain testimony that would have shown Petitioner's actual innocence; (b) that the prosecution violated the rule set forth in *Brady v. Maryland*, 373 U.S. 83 (1963) when it suppressed material evidence and testimony that would have shown the Petitioner's actual innocence; (c) that the prosecution used perjured testimony to convict Petitioner; and (d) that, at the trial and appellate level, the

state courts relied on and made rulings and decisions that were contrary to or involved an unreasonable application of clearly established federal law.

In response, the State argues that Petitioner's amended habeas claims should be dismissed because claims (a), (b), and (c) are procedurally defaulted. The State further argues that claim (d) is not a habeas claim at all, but an argument in support of claims (a), (b), and (c), and should be dismissed accordingly. Finally, the State argues that claim (a) lacks merit.[6]

## II. RELEVANT STATUTES

Section 2254 of Title 28 of the United States Code provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. . . .

The Illinois Post-Conviction Hearing Act, 725 ILL. COMP. STAT. 5/122-2, provides that:

---

[6] Respondent argues that Petitioner's amended habeas claims should also be dismissed for failure to comply with Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts. Rule 2(c) provides that habeas petitions must: "(1) specify all the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground." Indeed although Petitioner's original habeas petition includes specific grounds for relief and documents and affidavits to support those grounds, the amended habeas petition does not. Despite that, pro se habeas petitions, such as Petitioner's, are to be afforded generous interpretation and construed liberally. *See Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004) (interpreting a pro se claim of ineffective assistance of counsel for failing to bring a Brady claim as making a Brady claim proper). Respondent itself states in its answer that it "presumes that [P]etitioner intended to incorporate the factual bases from his original habeas petition to the claims in his amended petition." (Resp't Answer, 9. ) Therefore, failure to comply with Rule 2(c) of the Rules Governing Section 2254 Cases should not be the basis for dismissal of Petitioner's claims.

The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached.

## III. DISCUSSION

A federal court may only grant a writ of habeas corpus when a petitioner demonstrates that he is "in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997). A habeas petition on behalf of a person in custody pursuant to a judgment of a state court cannot be granted unless the decision of the state court was "contrary to or involved an unreasonable application of clearly established Federal law" or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254 (d)(1-2).[7]

As a threshold matter, I must determine if Jones has procedurally defaulted on his three remaining habeas claims, (a), (b), and (c). A claim can be procedurally defaulted if a petitioner fails to exhaust state remedies and give "the state courts a meaningful opportunity to consider the substance of the habeas claims that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). To give state courts this meaningful opportunity to consider the claims, a petitioner must invoke "one complete round of the State's established appellate review process;" in Illinois, "one complete round" is completed when a petitioner has presented the habeas claims at each stage of the appellate process, up through the Illinois Supreme Court. *O'Sullivan v. Boerckel*, 526 U.S.

---

[7] Petitioner's habeas claim (d) is that at the trial and appellate levels, the state courts relied on and made rulings and decisions that were contrary to or involved an unreasonable application of clearly established federal law. Petitioner's claim (d) does not appear to be an independent habeas claim, but rather seems to be an argument in support of claims (a), (b), and (c). Respondent rightly argues that, although Petitioner's claim (d) is a correct recitation of the standard set out in 28 U.S.C. § 2254 (d)(1-2), it is not itself a habeas claim and should therefore be dismissed. Accordingly, Petitioner's claim (d) is dismissed.

838, 845 (1999). "A petitioner's failure to fairly present each habeas claim to the state's appellate and supreme court in a timely manner leads to a default of the claim, barring the federal court from reviewing the claim's merits." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citing *O'Sullivan*, 526 U.S. at 848).

A petitioner's claim may also be procedurally defaulted if "that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)). A state law ground that provides the basis for a state court decision is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *U.S. ex. rel. Bell v. Pierson*, 267 F.3d 544, 556 (7th Cir. 2001) (citation omitted). A state law ground is adequate when it is a "firmly established and regularly followed state practice" at the time it is applied. *Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999).

A federal court may excuse a procedural default if a petitioner either (1) shows cause for the default and prejudice arising from failure to review the claims, or (2) demonstrates that failure to review the claims on procedural grounds would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Perruquet*, 390 F.3d at 514.

## A. Procedural Default

### 1. Procedural Default for Failure to Raise Claims in One Complete Round

Petitioner's claims (b) and (c) – that the prosecution violated Brady and used perjured testimony to convict Petitioner -- are procedurally defaulted because they were not raised in "one complete round of the State's established appellate review process." *See O'Sullivan*, 526 U.S. at 845. Petitioner raised claim (b) in his pro se post-conviction petition (Pet. for Post-Conviction

Relief, 3-4), but he did not raise claim (b) in his appeal of the circuit court's dismissal of his post-conviction petition (See Br. and Argument for Pet'r-Appelant), nor did he raise it in his post-conviction petition for leave to appeal (See Pet. for Leave to Appeal). Petitioner raised claim (c) in his successive post-conviction petition (See Mem. in Supp. of Pet. for Post-Conviction Relief at 9), but he did not file a petition for leave to appeal the denial of his successive post-conviction petition. Petitioner failed to present claims (b) and (c) at each stage of the appellate process for full review. Therefore, claims (b) and (c) are procedurally defaulted. *See Chambers*, 264 F.3d at 737.

## 2. Procedural Default Based on Independent and Adequate State Law Grounds

Respondent argues that Petitioner's claim (a) – that Petitioner was denied effective assistance of counsel when trial counsel failed to obtain testimony that would have shown Petitioner's actual innocence – is procedurally defaulted on independent and adequate state law grounds. *See Perruquet*, 390 F.3d at 514. The independent and adequate state ground doctrine bars "federal habeas when a state court [has] declined to address a prisoner's federal claims because the prisoner [has] failed to meet a state procedural requirement." *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002) (quoting *Coleman*, 501 U.S. at 729-30). A state law ground that provides the basis for a state court decision is independent when the court actually "relied on the procedural bar as an independent basis for its disposition of the case." *Pierson*, 267 F.3d at 556. A state law ground is adequate when it is a "firmly established and regularly followed state practice" at the time it is applied. *Franklin*, 188 F.3d at 882.

Respondent contends that Petitioner's failure to meet the state procedural requirement codified in the Illinois Post-Conviction Hearing Act, 725 ILL. COMP. STAT. 5/122-2, that post-conviction petitioners attach affidavits, records, or other evidence supporting its allegations

or that petitioners state why the supporting documents are not attached, constitutes an independent and adequate state ground for procedural default.  In his post-conviction petition, Jones did attach a segment of the transcript from Michael Stone's trial, in which Stone admitted to shooting Gardner three times.  (Pet. for Post-Conviction Relief, 3-4.)  However, the Illinois Appellate Court found this trial transcript insufficient because it was "unsupported by [an affidavit sworn by] codefendant Stone . . . [stating] that he was available for trial and would have been willing to testify, and that his testimony would have been the same as at his own trial." *People v. Jones*, No. 1-05-1212 at 6 (Ill. App. Ct. Sep. 26, 2006).  The court stated that the absence of such an affidavit "alone justifie[d] the summary dismissal of defendant's petition." *Id.* Indeed, the procedural basis for dismissal relied upon by the Illinois Appellate Court was an independent state ground.  Although the state appellate court went on to consider the merits of Petitioner's claim (a) of ineffective assistance of counsel, it only did so in the alternative after stating that the lack of an attached affidavit "alone justifie[d] the summary dismissal of defendant's petition." *People v. Jones*, No. 1-05-1212 at 6 (Ill. App. Ct. Sep. 26, 2006) (emphasis added).  Petitioner's failure to attach an affidavit from Stone stating he would be willing to testify was an independent procedural basis for the disposition of the case.

The procedural basis for dismissal was also likely adequate.  This is because Illinois courts regularly invoke the procedural requirement that post-conviction petitioners attach any necessary supporting affidavits.  *See People v. Delton*, 882 N.E.2d 516, 520-22 (Ill. 2008) (holding that trial transcript of defendant testifying he was tired of police harassment did not provide the requisite factual support for defendant's post-conviction allegations that his counsel did not investigate instances of prior police harassment);  *People v. Collins*, 782 N.E.2d 195, 198-99 (Ill. 2002) (holding that a sworn verification cannot serve as a substitute for the

"affidavits, records, or other evidence" mandated by section 122-2). Indeed, "Illinois courts routinely dismiss claims for post-conviction relief that lack support in the record or supporting affidavits for the proposition that the petitioner's constitutional rights have been violated." *Spreitzer v. Schomig*, 219 F. 3d 639, 647 (7th Cir. 2000). Therefore the state law ground relied upon by the Illinois Appellate Court to dismiss claim (a) appears adequate.[8]

For the foregoing reasons, the dismissal of Petitioner's claim (a) that Petitioner was denied effective assistance of counsel is procedurally defaulted on independent and adequate state law grounds.[9]

---

[8] It could be argued that although Illinois courts routinely require petitioners to attach necessary affidavits to post-conviction petitions, the requirement of a specific affidavit requiring a potentially exonerating witness to swear to his willingness and availability at trial is not "firmly established and regularly followed." There do not appear to be other Illinois cases in which a post-conviction petition was dismissed for failure to present an affidavit from a potentially exonerating witness that the witness would be willing and available to testify. However, the precise number, type, and contents of affidavits required by a state court in reviewing a post-conviction petition ultimately depend on the court's determination of the sufficiency of the evidence that was put forward. In some instances, an affidavit stating a witness would be willing to testify is a factor considered in the defendant's favor. *See People v. Morris*, 779 N.E.2d 504, 517 (Ill. App. 2002) (granting an evidentiary hearing where a post-conviction petition was supported by affidavits of alibi witnesses who stated they were ready and willing to testify on behalf of defendant). In other instances, the lack of any affidavit at all may not be fatal to a claim. *See People v. Rivera*, 795 N.E.2d 1016, 1021 (Ill. App. 2003) (holding that a defendant was not required to file an affidavit in support of his allegations and a certification would suffice). It is not for this court to inquire into the state court's determination of the sufficiency of the affidavits attached to a post-conviction petition. Rather, this court is merely to determine whether application of the general rule requiring support in the form of "affidavits, records, or other evidence" is an independent and adequate state ground for dismissal; it is.

[9] Respondent further contends that Petitioner's claim (c) that the prosecution used perjured testimony to convict Petitioner is also procedurally defaulted on independent and adequate state law grounds. Claim (c) is already procedurally defaulted because it was not invoked in one complete round of the State's established appellate review process, and therefore, it is unnecessary to consider whether claim (c) is defaulted on independent and adequate state grounds.

**B. Exceptions to Procedural Default**

A federal court may excuse a procedural default if a petitioner can show either (1) cause for the default and prejudice arising from failure to review the claims, or (2) that failure to review the claims on procedural grounds would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Perruquet*, 390 F.3d at 514; *Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999).

**1. Cause and Prejudice**

Petitioner fails on the cause prong of the cause and prejudice exception to procedural default. In order to establish "cause," the petitioner must show that some external objective factor prevented compliance with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner does not show any external objective factors that prevented him from attaching the necessary affidavit for claim (a) regarding ineffective assistance of counsel, nor does he show any external objective factors that prevented him from invoking claims (b) and (c) in one complete round of the State's established appellate review process. Therefore, Petitioner does not satisfy the requirements of the cause and prejudice exception.

**2. Miscarriage of Justice**

The Supreme Court has recognized a "miscarriage-of-justice exception" for procedurally defaulted claims. *House v. Bell*, 547 U.S. 518, 536 (2006). This exception allows habeas review of defaulted claims in those rare circumstances when "the principles of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of correcting a fundamentally unjust incarceration." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 495 (1986) (citation and quotations omitted)). The fundamental miscarriage of justice exception requires "the habeas petitioner to show that a constitutional violation has probably resulted in the

conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Smith v. McKee*, 598 F.3d 374, 387-88 (7th Cir. 2010) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).[10]

A petitioner must support an allegation of actual innocence with "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. "New" evidence is evidence that was not presented at trial.[11] *Gomez v. Jaimet*, 350 F.3d 673, 679-80 (7th Cir. 2003). To support his petition, Jones relies on the following: (1) a 2005 affidavit sworn by Michael Stone in which Stone stated he was "solely responsible for the shooting death of Friday Gardner" and stated that to his knowledge, Jones was never armed and did not harm the victim in any manner, (2) a document titled "Michael Stone's Oral Statement - ASA O'Reilly, Det. J. O'Brien," dated September 14, 1999, in which Stone stated he fired his gun three times at the victim, (3) a segment of the transcript from Michael Stone's 2002 trial, in which Stone admitted to shooting Gardner three times, and (4) a 2006 affidavit sworn by a Jeremiah McReynolds in which McReynolds stated that the person firing the shots from the alleyway at the victim was a person named "Man" [Michael Stone's nickname].

---

[10] Although Petitioner does not allege actual innocence as a grounds for an exception to procedural default, he does assert in his amended federal habeas petition that his trial counsel failed to obtain testimony that would have shown Jones to be actually innocent.

[11] Here, Petitioner's actual innocence allegations can only act as "a gateway, for having his otherwise barred constitutional claims heard." *Gomez*, 350 F.3d at 679. Where this is the case, the "new evidence" required need be evidence that was not introduced at trial; there is no requirement that the evidence be "newly discovered." *Id.*

To determine whether a petitioner has provided sufficient evidence to establish that it is more likely than not that no reasonable juror would have convicted him in the light of new evidence, courts engage in a balancing test, weighing the exculpatory evidence against the inculpatory evidence.  For instance, in *Smith v. McKee*, 598 F.3d at 387-88, the Court held that two affidavits put forward by the habeas petitioner – one stating the petitioner was at home at the time of the shooting and another stating that the petitioner was not the shooter – did not sufficiently counter the state's two eye witness identifications and the evidence of the petitioner's self-inculpating statement to a detective and a state's attorney.

In *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005), the Court held that the affidavits put forward by the habeas petitioner of six alibi witnesses were not sufficient new evidence to counter the government's six witnesses who claimed the petitioner committed the crime.  The Court found that had the six "new" alibi witnesses been called at trial, the result would have been, at best, a draw.  In such instance, the defendant did not meet the high threshold for an actual innocence claim. *Id.*  As Judge Flaum noted in his concurring opinion, Hayes presented the grand jury testimony of six family members, each of whom testified that Hayes was "at home near the time of the crime[,]" but none of whom testified to his continued presence during the relevant time frame. *Id.* at 940.  Hayes failed to put forth any testimony "stating that he could not have left the house during [the relevant period] or any other evidence that might support a complete alibi defense." *Id.*

There are, however, instances where eyewitness statements may be enough to satisfy the miscarriage of justice standard.  In *Schlup*, the petitioner filed a habeas petition alleging constitutional error leading to his conviction for murder of a fellow inmate.  513 U.S. at 301.  At trial, the State relied mainly on the testimony of two corrections officers who had witnessed the

incident. *Id.* at 302. It produced no physical evidence tying the petitioner to the murder. *Id.* The Supreme Court found that several sworn statements by other inmates that the petitioner was not involved with the crime, together with affidavits from another inmate and retired correctional officer attesting to certain timing matters and the petitioner's demeanor, respectively, were enough to cast doubt on the petitioner's conviction. *Id.* at 331.

Like *Schlup*, the exculpatory evidence in this case may be sufficient to satisfy the actual innocence exception. Here, Petitioner put forward Stone's affidavit, a segment of Stone's trial transcript, and Stone's oral statement to an assistant state's attorney and detective. These three pieces of evidence are essentially the redundant statements of a single witness on three different occasions over 6 years. On all three occasions, including the two during which Stone gave sworn testimony, Stone was consistent in his statement of the events that took place on the night at issue. Petitioner also offers McReynolds' affidavit. The exculpatory statements of these two witnesses, paired with the physical evidence in this case, may (assuming they are reliable) outweigh the inculpatory testimony of Antonio Phillips (claiming that he saw Cortez Jones pull a gun from his pocket and shoot the victim at close range), the testimony of Lessy Rene Phillips (claiming that she saw Cortez Jones take a gun and shoot the victim two times at close range), the contradicted (and indirectly impeached) testimony of Tommy Miller Gaston (claiming that Jones fired a shot through his jacket pocket at the victim), and the testimony of Officer Cedrick Taylor (claiming that after seeing and hearing gunshots, he witnessed a person running in the street who matched Jones's description holding a dark object that could have been a gun).

First, the State's witnesses were inconsistent in certain key aspects of their testimony. Antonio Philips' account has Cortez shooting from an inch away, and Lessy Rene Philips puts Cortez two to three feet away, but there is no evidence of close-range firing. Gatson testified that

19

Jones shot through his jacket pocket from four or five feet away after having initially told police that Stone shot the victim from the alley.  Officer Taylor testified that he saw muzzle flashes at the mouth of the alley, consistent with Stone's account of the incident.[12]  The State's witnesses testified that they heard anywhere from two to four or five shots, however, only three shell casings and one bullet were found at the scene, and two bullets recovered from the victim's body.  At Stone's trial, the State proceeded on the theory that it was Stone who filed the fatal shot and never suggested that someone else did so.  At Jones's trial, the State's theory was essentially that it was Cortez Jones who fired the fatal shots, and now the State suggests that both Stone and Jones fired shots at the scene.  Interestingly, none of the State's witnesses that testified at Jones's trial made mention of Stone firing any shots.

Here, the new evidence raises sufficient doubt about Petitioner's guilt "to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error."  Unlike *Hayes* and *Smith*, Stone's statement does more than create a draw.  Stone is not merely an alibi witness but someone who, from the time of the incident, has maintained that he fired three shots at the victim from a relative distance, and his statement appears consistent with the physical evidence in key respects, unlike the testimony of the State's witnesses.  If Stone's statement is reliable (and at this point there is little to indicate that it is not), and his testimony along with that of McReynolds had been presented to the jury "it surely cannot

---

[12] It is true that Officer Taylor testified to hearing more than three shots, however, the physical evidence found at the scene together with Taylor's testimony indicate, at least, that some of those shots may have come from elsewhere.  Officer Taylor testified to seeing muzzle flash in front of the alley upon hearing the first two shots, which were "a little bit muffled," and hearing three more that were "pretty loud." (See Tr. of R. for Appeal, I-10.)  Taylor testified that during the second set of shots, he could not see down the alley and did not know where the shots had come from.

be said that a juror, conscientiously following the judge's instructions requiring proof beyond a reasonable doubt, would [have voted] to convict." *Schlup*, 513 U.S. at 331. In light of the evidence presented at trial, Stone's admission (and the corroborating affidavit by McReynolds), may make it more likely than not that no reasonable juror would have convicted Jones, and therefore, Jones may have established the miscarriage of justice exception to the procedural default. Accordingly, a limited evidentiary hearing on the issue of Petitioner's actual innocence is warranted.[13]

## C. Ineffective assistance of counsel on the merits[14]

The State argues that even if Petitioner's ineffective assistance of counsel claim is preserved for review, the claim lacks merit and the petition for habeas relief should be denied. While I am not persuaded by this argument, I need not address it at this time. If Petitioner can demonstrate his actual innocence, then this Court will review the merits of Petitioner's claim and determine whether a hearing as to the issue of counsel's ineffectiveness is warranted.

---

[13] In *Schlup*, 513 U.S. at 341-42, the Supreme Court explained that:

in the highly unusual case where the district court believes on the basis of written submissions that the necessary showing of "actual innocence" may be made out, it should conduct a limited evidentiary hearing at which the affiants whose testimony the court believes to be crucial to the showing of actual innocence are present and may be cross-examined as to veracity, reliability, and all of the other elements that affect the weight to be given the testimony of a witness. After such a hearing, the district court would be in as good a position as possible to make the required determination as to the showing of actual innocence.

[14] Here I discuss only Petitioner's ineffective assistance of counsel claim. Petitioner's *Brady* claim fails as a matter of law because the evidence he claims was suppressed is testimony given as part of a public proceeding. Matters of public record are readily accessible and there is no prosecutorial obligation to disclose such information. *See Price v. Thurmer*, 514 F.3d 729, 732 (7th Cir. 2008).

## IV. CONCLUSION

Petitioner's claims for writ of habeas corpus are procedurally defaulted for failure to raise all claims in one complete round of Illinois's established appellate review process and for failure to comply with independent and adequate state procedural requirements.  However, Petitioner may have established an exception to procedural default, and a hearing on the issue of Petitioner's actual innocence is warranted.  If Petitioner is able to demonstrate that he is actually innocent, he may be entitled to further proceedings on the issue of whether his trial counsel was ineffective.  Although Plaintiff, representing himself, has done an adequate job thus far, I find that the appointment of counsel is in Plaintiff's best interest, in case this Court has misapprehended any of the issues involved here.

ENTER:

James B. Zagel
United States District Judge

DATE:  September 2, 2010